ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY
*v.* EICHELMAN.

Opinion delivered March 29, 1915.

1.  RAILROADS—INJURY AT CROSSING—CONTRIBUTORY NEGLIGENCE.—Plaintiff was injured by being struck by a moving train while attempt-

ing to cross defendant railway's tracks at a public crossing. Defendant plead plaintiff's contributory negligence. *Held*, in instructing the jury, it was error to tell the jury that plaintiff was not a trespasser and had the lawful right to be upon the track at the time of his injury, and that the jury should have been permitted to say whether or not appellee was guilty of contributory negligence in driving upon the railroad track.

2. RAILROADS—PUBLIC CROSSINGS—DUTY OF CARE.—A duty rests upon railroads to exercise reasonable and ordinary care to observe travellers about to cross its tracks at highway crossings, and it must refrain from doing any heedless or unnecessary act calculated to frighten the teams of travellers rightfully approaching crossings.

3. RAILROADS—PUBLIC CROSSINGS—DUTY OF TRAVELLER.—A duty rests upon a traveller approaching a public railway crossing not to unnecessarily or negligently place his horse in a position where he may become frightened by the escape of steam or by other noises which engines necessarily make even when they are being operated with due care.

4. RAILROADS—INJURY TO TRAVELLER AT CROSSING—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.—Plaintiff's horse becoming frightened at the escape of steam from an approaching locomotive, while plaintiff was attempting to cross the tracks at a public crossing, plaintiff jumped from his wagon sustaining injuries. *Held*, the question of plaintiff's contributory negligence in jumping from the wagon, should have been submitted to the jury. It was a question of fact for the jury whether plaintiff's act was a negligent one under the circumstances of the particular case.

5. NEGLIGENCE—IMPENDING DANGER—CONTRIBUTORY NEGLIGENCE.—When one acts in an emergency in the presence of an impending danger he is not held to the exercise of that degree of care which would be exacted of him if there was an opportunity for reflection and the formation of a deliberate judgment.

6. DAMAGES—PERSONAL INJURIES—LOSS OF EARNINGS AND BUSINESS—EVIDENCE.—In an action for damages caused by personal injuries, on the question of damages, it is competent to prove plaintiff's capacity for and disposition to work and any special qualification which plaintiff has which tends to increase his earning capacity; but evidence tending to show loss of profits resulting to invested capital and from the labor of plaintiff's partner, when plaintiff's injury occasioned no impairment of the earning capacity of either, is inadmissible.

Appeal from Hot Spring Circuit Court; *W. H. Evans*, Judge; reversed.

STATEMENT BY THE COURT.

On the 8th day of June, 1914, appellee, in company with his business associate, one George Brown, drove over to the cattle pens at the foot of East Sixth Street, Little Rock, and after remaining there for about an hour, they started on their return home, driving west on said street in a one-horse wagon, Brown doing the driving. When they approached the point where the switch tracks of appellant cross said street, they saw a switch engine backing north over the crossing, pushing two cars, and going at a rapid rate. They stopped some forty or fifty feet from the crossing, and waited until the switch engine and cars had cleared the crossing, and had gone some distance north, when they started to drive across, the way being apparently clear. The evidence is conflicting as to the occurrences thereafter, and as to the manner and cause of appellee's injury; but his evidence, and that offered in his behalf, tends to establish the following facts: That when the wagon reached the third, or middle, track of the switch over the crossing, and the horse had his forefeet on the track over which the engine was traveling, the engine, after having kicked the two cars on to a switch, suddenly reversed and started back toward the crossing with great noise and puffing of steam. This frightened their horse and caused him to jump and turn suddenly to the south on the track in an attempt to run in that direction. Brown was doing all he could to prevent the horse from running away. The engine continued to approach the crossing from the north, puffing steam and making much noise, which tended to increase the fright of the horse, which continued to plunge and jerk the wagon and caused the wheels to slide along the side of the rail until the wagon had gotten off the street and down the track to where the rails stood some six or eight inches above the ground. The engine kept bearing down on them with its accompanying noise, and when appellee saw it was within a very short distance of the wagon, he started to get out of it, when the horse jerked the wheel of the wagon upon and over the rail of the track, and threw ap-

pellee out of the wagon, and very seriously injured him. Appellee further offered evidence tending to show that the operatives of the engine knew of his presence at the crossing, and of his evident intention to cross over, and further that as the engine approached them, those in charge of it saw appellee's situation and danger, and appellee testified that the man sitting on the right of the engine, who was evidently the engineer, appeared to be amused at the situation.

Upon the other hand, appellant pleaded contributory negligence and offered evidence tending to show that the switch engine was approaching this crossing as appellee commenced driving across the tracks, and that there was no unusual escape of steam or other noise, and that as soon as it appeared that the horse was frightened, the engine was stopped, but that the horse continued to plunge thereafter, when appellee became frightened and jumped out of the wagon, when, by remaining in it he would probably have avoided receiving any injury.

Appellee was permitted to show that he and his partner formed a partnership in September, 1911, to engage in the butcher and grocery business, and that with a capital of only $700 invested, they had, within the twenty months preceding appellee's injury, earned a net profit in their business of between eight and eleven thousand dollars, in addition to the meat and groceries which the respective families of the partners had used. And appellee was further permitted to show that an inventory was again taken in June, 1914, about twelve months after he was injured, from which it appeared that there was a net profit of only $2,000 for the thirteen months subsequent to the first inventory.

At the request of appellee, the court gave an instruction numbered 1, which reads as follows:

"You are instructed that plaintiff and his companion, Brown, were not trespassing but in the exercise of a lawful right in attempting to cross the tracks of defendant's railroad at the alleged public crossing in the city of

Little Rock, and it was the duty of defendant's servant in charge of its engine on said tracks to exercise reasonable care and precaution to discover plaintiff's presence on or in close proximity to said tracks and to avoid frightening his horse and injuring plaintiff; and if you find from the evidence that while plaintiff and his said companion, Brown, were attempting to drive over said tracks at said public crossing, and, while in the exercise of ordinary care for their safety, the engineer in charge of one of defendant's engines on said track near to the place where plaintiff and his said companion were attempting to cross, negligently drove said engine down toward and so near to and upon plaintiff and his horse with such rapidity and with such accompanying noises as to frighten said horse and thereby cause plaintiff to be injured, then the defendant is liable, and you will find for the plaintiff.'' Instruction numbered 3, which reads as follows, was also given.

"You are instructed that if you believe from the evidence that plaintiff was in the face of great, imminent and threatening danger to himself, and that such danger was caused by the negligence of the servants of the defendant in charge of its said engine, and in an attempt to escape said danger he jumped from the wagon in which he was riding, or in an effort to jump from same was thrown out, and injured, he was not thereby guilty of any negligence contributing to his injury that will bar his recovery in this action, even though you further find that if he had remained seated in the wagon he would not have been hurt.''

Other instructions were given, to which exceptions were duly saved. But the action of the court in giving the two instructions set out above, and in permitting appellee to prove the earnings of his business, are the only questions in the case which we regard as of sufficient importance to discuss.

*E. B. Kinsworthy, W. R. Donham* and *T. D. Craw-ford,* for appellant.

1.   The court erred in permitting plaintiff to testify as to his earnings before and after the injury.   58 N. Y. 391, 201 Pa. St. 384; 52 Hun. 111; Anderson's Law Dictionary, 390; 177 Pa. St. 1; 93 Mass. 76; 95 Mich. 209; 128 Ill. 549; 21 Ark. 431; 56 Am. Rep. 28; 78 Wis. 89; 23 Am. St. 393; 54 Wis. 208; 41 Am. Rep. 19.

2.   Instruction No. 2 was erroneous in this: It in effect told the jury that the plaintiff had the right-of-way. That is not the law.   80 Ark. 169; 36 Ark. 607; 77 Ark. 174; 64 Ark. 535; 3 Elliott on Railroads, § 1264; 2 White, Per. Inj. on Railroads, § 886; 39 Kan. 485; 128 N. C. 26; 122 Wis. 287; 114 Ga. 386.

3.   Instruction No. 3 is erroneous in this: That it does not submit to the jury the question of contributory negligence of the plaintiff.   67 Ark. 209; 91 Ark. 388; 92 Ark. 554.

*Robertson & De Mers,* for appellee.

1.   There was no error in permitting plaintiff to testify as to the earnings of the business before and after receiving the injury.   13 Cyc., p. 142; 63 Ark. 495; 8 Am. & Enc. of Law, p. 626; 63 Tex. 381; 8 N. E. 817.

2.   There was no error in giving instruction No. 2 at request of plaintiff.   69 Ark. 133; 106 Ark. 533; 60 Ark. 409; 77 Ark. 174; 89 Ark. 270; 99 Ark. 226.

3.   Instruction No. 3 was in accord with the law.   78 Ark. 431; 84 Ark. 246; 102 Ark. 505.

SMITH, J., (after stating the facts).   (1)   We think the court should not have given appellee's instruction numbered 1.   It was not applicable to the issue in this case.   It was not contended that appellee was a trespasser, and his right to cross the railroad tracks at the public crossing was not denied.   But this right, of course, was not an absolute one.   Under this instruction the jury might well have inferred that appellee had the right-of-way and that there was, therefore, no question as to his contributory negligence for the consideration of the jury.

The rights of the traveler and of the railroad at public crossings are reciprocal and have been discussed in many decisions of this court, and were correctly stated in the trial below in other instructions given to the jury, but these instructions are in conflict with this instruction numbered one.  The jury should have been permitted to say whether or not appellee and his companion were guilty of contributory negligence in driving upon the railroad track and should not have been told that appellee was not a trespasser and had the lawful right to be upon the track at the time of his injury.  In the recent case of *St. Louis, I. M. & S. Ry. Co.* v. *Transmier*, 106 Ark. 530, the court discussed the reciprocal duties of the traveler and the railroad at a public crossing, in which case it was said (after citing a number of cases on this subject):

(2)  "The doctrine of those cases is that 'the duty of railroads is to exercise reasonable and ordinary care to observe travelers about to cross at a highway crossing' and it should refrain from doing any heedless or unnecessary act calculated to frighten teams of travelers rightfully approaching crossings."

(3)  This duty the railroad must perform under all circumstances, but the duty also rests upon the traveler not to unnecessarily or negligently place his horse in a position where it may become frightened by the escape of steam, or other noises, which engines necessarily make, even when they are being operated with due care.

(4-5)  We think, too, that the third instruction given at the request of appellee was erroneous.  Under this instruction, the jury was not permitted to pass upon the question of appellee's contributory negligence in jumping from the wagon.  This question of fact should have been passed upon by the jury.  Had appellee remained in the wagon he would not have been hurt, yet the fact that he jumped and was injured did not, as a matter of law, constitute contributory negligence.  Where one acts in an emergency, in the presence of an impending danger, he is not held to the exercise of that degree of care which would be exacted of him if there was an opportunity for

reflection and the formation of a deliberate judgment. It is not necessarily a question as to whether one choice of conduct proves more hazardous than another would have been; but the question is whether or not the choice in fact made was a negligent one under the circumstances of the particular case, and this is a question of fact for the jury and not one of law for the court. *St. Louis, I. M. & S. Ry. Co.* v. *Tuohey,* 67 Ark. 209; *Woodson* v. *Prescott & N. W. Ry. Co.,* 91 Ark. 388; *St. Louis, I. M. & S. Ry. Co.* v. *York,* 92 Ark. 554.

The authorities are conflicting upon the right to prove the loss of profits to the business of an injured party occasioned by his inability, because of his injury, to give personal attention to his business. The case of *Wallace* v. *Pennsylvania Rd. Co.,* 52 L. R. A. 35, involved this question, and there is an extensive case note which reviews a great many authorities upon the subject. In the case cited the court said:

"Profits derived from capital invested in business can not be considered as earnings, but in many cases profits derived from the management of a business may properly be considered as measuring the earning power. This is especially true where the business is one which requires and receives the personal attention and labor of the owner."

The business of the plaintiff in that case was that of operating a boarding house, and it was shown that by reason of her injury she was thereafter unable to conduct that business. Appellee's business was not destroyed, and this is not a suit for damage done to that business or for any loss of profits sustained by the owners.

(6) It is permissible always to prove one's capacity for and disposition to work, and any special qualifications which one has which tends to increase his earning capacity may be shown. And it was, therefore, competent here to show what appellee's duties were in connection with his business; what his qualifications were for discharging those duties; what the services of one

similarly qualified would have been worth to this business; and the extent to which appellee had been rendered unable to discharge his customary duties. A somewhat similar question was involved in the case of *St. Louis, I. M. & S. Ry. Co. v. Osborne,* 95 Ark. 310, and the rule to be observed in these cases was there discussed. But we think one suing for losses to his business should not be permitted to go further than was there authorized; and we conclude, therefore, that the court improperly admitted the evidence tending to show the accumulated profits of appellee's business. These profits resulted in part from invested capital and in part from the labor and services of a copartner, and the injury sued for has occasioned no impairment of the earning capacity of either, and appellee should have been permitted to show nothing more than the decreased value of his own services.

For the errors indicated the judgment will be reversed and the cause remanded for a new trial.