MISSOURI PACIFIC TRANSPORTATION COMPANY *v.* MITCHELL.

4-5781 137 S. W. 242

Opinion delivered February 19, 1940.

*Rose, Loughborough, Dobyns & House,* for appellant.
*Dick Jackson* and *J. H. Lookadoo,* for appellee.

HUMPHREYS, J. Four separate suits were brought in the circuit court of Clark county against appellants, one by Mose Mitchell to recover $3,000, one by his wife, Florence Mitchell, to recover $3,000, one by Mose Mitchell, Jr., to recover $3,000, and one by James Robert Mitchell to recover $1,500, for injuries received by them in a collision between a passenger bus, owned by the Missouri Pacific Transportation Company and being driven by the other appellant, C. W. Raines, an employee of the Missouri Pacific Transportation Company, and a team and wagon owned and being driven by Mose Mitchell.

The negligence alleged in each complaint against appellants as grounds for recovery was:

First, that appellant, Raines, was driving at a dangerous rate of speed, and,

Second, that he (Raines) left the right-hand side of the highway and drove over on the left side of the highway and struck the team and wagon occupied by Mose Mitchell, his wife and two sons, killing one mule, demolishing the wagon and severely injuring each of the occupants.

C. W. Raines filed separate answers to the complaints denying the material allegations therein.

The Missouri Pacific Transportation Company filed separate answers to the complaints denying the material allegations therein and pleaded contributory negligence on the part of the plaintiffs and, as a further defense, pleaded that the collision was unavoidable because just before the collision one of the mules pulling Mose Mitchell's wagon shied, reared up and came down on the bus driver's side of the highway immediately in front of the bus, causing the collision.

The cases were consolidated for the purposes of trial and were submitted to a jury under the pleadings, instructions of the court and the testimony introduced by the parties, resulting in a verdict for appellants against Mose Mitchell, Jr., and James Robert Mitchell,

and against appellants in favor of Mose Mitchell for $1,500 and in favor of Florence Mitchell for $2,000, from which verdicts and judgments against appellants they have duly prosecuted an appeal to this court.

The main contention of appellants for a reversal of the verdicts and judgments is, according to the undisputed evidence, the collision was not caused by Raines negligently driving the bus at a dangerous rate of speed, nor was it caused by Raines negligently driving across the center of the highway to the wrong side thereof and colliding with Mose Mitchell's wagon. Appellants argue that viewing the evidence in the most favorable light to appellees no negligence was shown on the part of appellants. We think otherwise for there is substantial evidence in the record tending to show that immediately before and at the time of the collision C. W. Raines was traveling at a speed of 65 or 70 miles an hour and in attempting to pass a car in front of him which was opposite and even with the wagon he ran across the center black line of the highway and struck the team and wagon. A number of witnesses testified as to the rate of speed Raines was traveling, and that in an attempt to pass the car in front of him he turned to his left across the center of the highway and ran into the wagon. There is little or no dispute in the testimony that when he ran into the wagon, Raines was on the wrong side of the highway, and that Mose Mitchell was driving his wagon on his right side of the highway. Raines' explanation is that he was confronted with an emergency and had he turned to his right he would have run off the dump into a ditch, and had he continued to drive straight ahead he would have run over the car in front of him, which suddenly and unexpectedly slowed up, so he turned to the left in an effort to pass between the car in front of him and the wagon. There is testimony in the record to the effect that he was fifty yards behind the car in front of him as he neared the wagon, and that he did not slow down; that the car in front of him slowed down a little as it neared the wagon, but did not stop. The jury might have concluded from this evidence that Raines could have slowed down

himself while covering the distance of fifty yards between him and the car in front of him had he been traveling at a reasonable rate of speed. There is testimony in the record tending to show that Raines had been traveling at the rate of 70 miles an hour before reaching the scene of the collision, and that he had not slowed down when the collision occurred.

J. C. Tolleson testified that about four or five miles back from the scene of the collision he himself was traveling seventy miles an hour and the bus passed him and that he continued to follow the bus to within two miles of the scene of the collision both going seventy miles an hour; that he then slowed down to forty miles an hour and the bus continued moving rapidly and got out of his view, and that the collision occurred before he himself got there.

C. R. Dougherty testified that he saw the collision, and that he was traveling forty-five or fifty miles an hour when the bus passed him; that when the bus passed him he whipped off to the side of the road when he saw the back end of the bus was going to hit his car, and that the bus went on down the road and passed another car before it and never did get straight in the road until it hit the mule. The jury may have concluded from this evidence that C. W. Raines was traveling at an unreasonably dangerous rate of speed and was the author of the jam or emergency he claimed to have gotten into. One cannot negligently create a dangerous situation and escape liability on the theory that he acted as he did under the impulse of the moment.

There is substantial evidence in the record to support the verdict of the jury that Raines was driving at a dangerously high rate of speed and negligently driving over on the wrong side of the road and into the wagon and team.

Appellant contends that the court erred in permitting J. C. Tolleson to testify that the bus passed him at Curtis, and that he was making seventy-five miles an hour being four or five miles from the scene of the accident, and that he continued to drive rapidly until he passed out of his view although he, Tolleson, had

slowed down to forty miles an hour. Appellants argue that this evidence was inadmissible and prejudicial for the reason that it tended to lead the jury to believe that the bus was being negligently driven at the time of the collision. Other witnesses testified that Raines continued to drive at a high and dangerous rate of speed after he passed out of the view of Tolleson. One witness testified, as above stated, that he passed him at such a rapid rate of speed that he had to turn off the road to let him pass, and another who was in sight of the collision said that he ran around him and passed another car and did not get straight in the road before he hit the wagon and team. We think this evidence tends to show that the speed at which Raines was traveling was a continuing act of negligence and that the rapid speed he was traveling when he passed Tolleson was not a separate and different act of negligence. Volume 9, Blashfield's Cyclopedia of Automobile Law and Practice, § 6171, is as follows:

"Generally speaking, any evidence of conditions leading up to or surrounding an automobile accident, which will throw light on the question of whether a traveler was in exercise of due care at the time of the accident, is admissible, in an action for injuries growing out of such accident." We think the evidence was admissible.

Appellant also contends that the court erred in giving instruction No. 3B relative to the damages sustained by Mose Mitchell in permitting the jury to take into consideration his future pain and suffering and diminished earning capacity. There is evidence in the record tending to show that as a result of his damages he would suffer future pain and that his capacity for work after his injury was greatly reduced.

We think both instructions as to the measure of damages were correct declarations of law applicable to and responsive to the evidence introduced by Mose Mitchell and Florence Mitchell.

Appellants' last contention for a reversal is that the verdicts for damages are excessive.

Florence Mitchell testified that the impact threw her out of the wagon and knocked her unconscious; that after they brought her to the hospital she came to about two o'clock the next morning and discovered that she was in a hospital in Arkadelphia; that during the time she was unconscious she did not suffer because she had been unconscious, but after becoming conscious she suffered much with her shoulder and arm; that a gash was cut in her head from up there (indicating) on down; that her head was injured until she has no feeling on the left side of her head; that it is numb and pains her at times; that it injured her hearing; that before the injury she was in good health and able to do any kind of work she wanted to; that her right shoulder and arm was injured and that she suffers from the injury; that she has not much strength in her right hand; that she can not lift heavy things; that she did most of her housework before she was injured and sent her children to school, but that since the injury she had not been able to do any work to amount to anything.

Dr. Townsend testified that the gash on Florence Mitchell's head was so deep that he could see the skull; that he took his finger and felt the skull; that the skull was bare; that the cut on Florence Mitchell's head was four or five inches long and gaped open an inch or more; that he found a good deal of injury to her left ear—that really about half of it was practically torn off and that while it healed up very nicely she complained of not being able to hear out of it; that she received a considerable lick on it which caused her to have a bad looking ear.

Florence Mitchell recovered $2,000, and we think it a very modest sum in view of the fact that the jury could have well found as a result of the injury that she lost her sense of feeling on the left side of her head and partially lost her hearing and lost a part of her ear and her ability to perform her household duties on account of the injury to her shoulder and arm to say nothing of the scar left across her head and face as a result of her injuries.

Mose Mitchell recovered $1,500 including the loss of a mule, the injury to another and the loss of his

wagon. He testified, in substance, that before the injury he was able to do any kind of work, but that after the injury he was not able to work as he had before; that his back pained him whenever he tried to get about, and that at the time of the trial he was still suffering much pain. He also testified that the jar came near breaking his back and strained a leader in his left leg; that whenever he sat down and attempted to get up he could hardly straighten out his leg and that when he attempted to step up he had to hold onto something to help him; that between the date of the injury and the date of the trial he had lost eleven pounds. We are unable to say that the amount he recovered was an excessive amount for the injuries he received and the pain and suffering he endured, especially in view of the fact that he lost a wagon worth $50, and a mule perhaps worth $150.

No error appearing the judgments are affirmed.