ABRAHAM *v.* JONES.

5-1486                                     310 S. W. 2d 488

Opinion delivered February 17, 1958.

[Rehearing denied March 24, 1958]

718

*Bruce Ivy* and *James M. Gardner,* for appellant.

*William S. Rader* and *James W. Steinsiek,* for appellee.

MINOR W. MILLWEE, Associate Justice. Appellants, Chadad Abraham and wife, own a business building on Ash Street in Blytheville, Arkansas, in which they operate a cafe. On the afternoon of June 12, 1956, a wooden awning or overhang attached to the front of the building weighing nearly a ton fell.

Appellee, Charlie Jones, brought this action against appellants alleging numerous acts of negligence in the construction and maintenance of the awning which he claimed struck him when it fell resulting in serious bodily injuries, great pain and suffering, loss of past and future earnings and the ability to earn a livelihood, for which he prayed judgment in the sum of $14,025.00. In their amended answer appellants admitted the awning fell and their liability for any injuries resulting therefrom but denied that appellee sustained any such injury or damage. On the issues thus narrowed the cause proceeded to a jury trial resulting in a verdict and judgment for appellee in the sum of $6,500.00.

Appellants first challenge the sufficiency of the evidence to support the verdict on the grounds that (1) "the testimony of appellee and his witnesses is so conflicting as to render it worthless to rest the verdict on"; and (2) the verdict "is against the preponderance of the evidence." In determining the sufficiency of the evidence to support a verdict on appeal the test is not whether it is supported by the preponderance of the evidence, but rather whether it is supported by any substantial evidence; and in making that determination the evidence adduced on behalf of appellee must be given the strongest probative force that it will reasonably bear. *Baldwin* v. *Wingfield,* 191 Ark. 129, 85 S. W. 2d 689; *Reed* v. *Baldwin,* 192 Ark. 491, 92 S. W. 2d 392. Another elementary rule is that the jury are the exclusive judges of the credibility of the witnesses and the weight to be given their testimony.

We briefly consider the evidence in the light of these settled rules. Appellee is a 68-year-old Negro farm laborer who lives with his friend, Major Franklin, at Blytheville, Arkansas. Appellee testified they had been chopping cotton on the day in question when they went to appellants' cafe where appellee purchased a cold drink. They then sat down on a bench on the front porch of the cafe and the awning of the porch fell without warning striking appellee on the head, shoulders "and all over". When the awning was raised by several

bystanders and an employee of the cafe appellee lay unconscious with blood running from his mouth and nose and was taken to a hospital where X-rays were made disclosing two broken bones in his left foot which was placed in a cast covering half of his leg. He was in the hospital one day and was taken home where he remained in bed for 30 days and used crutches for 30 or 35 days longer when he started using a cane which he was still using at the time of the trial, a year after his injury.

Appellee demonstrated to the jury how he had to walk on the heel of his injured foot. He stated he had suffered and was still suffering much pain in his foot, shoulder and back as a result of the injury; that he could hardly "git around" and would never "git around" as he used to; that he was still unable to chop or pick cotton which had been his lifetime vocation; and that his health had been good and he had never consulted a doctor prior to his injury. He formerly earned $700.00 or $800.00 a year chopping and picking cotton. The testimony of appellee was corroborated in the main by that of Major Franklin and W. A. Taylor, a bystander, who assisted in lifting the awning off the two men.

Dr. H. L. Hubener examined appellee at the hospital on the day of his injury. He described appellee's injuries as, "lacerations, fracture of the fifth metatarsal, contusion and concussion of the head, and a back sprain." He stated the injuries were painful and that appellee suffered from osteoporosis, a disease of the bone that goes along with old age and would delay the healing process. Appellee's foot had not healed when he removed the cast on July 5, 1956, but it showed good position. While he saw no evidence of a back injury on the X-ray film, appellee still complained of pain in his foot and back in November, 1956, and he did not disbelieve the complaint nor did he think appellee was then able to resume work.

Dr. W. W. Workman, a witness for appellants, examined appellee in May, 1957. Appellee then complained of pain in his foot and back which the doctor

did not disregard. X-rays then taken showed an old back injury, but if there had been a fracture of the foot it was no longer visible. On examination of the X-rays taken on the date of the injury he stated he found a fracture of the fourth and fifth metatarsal, and that the injury to appellee's back shown in the X-ray was a "compression type of deformity" which could have been caused by the awning striking appellee on the head and shoulders.

There was some contradiction of the foregoing testimony by that of the appellants and slight discrepancies in the versions given by appellee and certain witnesses on his behalf. It was the province of the jury to resolve these conflicts in the evidence and we do not regard them such as to render it worthless as a basis for the verdict, as appellants contend. On the contrary we hold it substantial and sufficient to sustain the verdict.

Appellants also argue the court erred in permitting the introduction of the mortality table showing appellee's life expectancy. The only objection urged at the trial was that this testimony was immaterial because there was no evidence of any future loss of earnings or disability. On this point we think the trial court correctly held that the testimony offered by appellee was sufficient to warrant a jury finding for future loss of earnings and disability. This testimony, although contradicted, was to the effect that appellee was still suffering pain and unable to perform his usual occupation as a farm laborer at the time of the trial. Similar evidence has been held sufficient to sustain a verdict for future loss of earnings and disability. *Missouri Pacific Transportation Co.* v. *Mitchell,* 199 Ark. 1045, 137 S. W. 2d 242.

Appellants also complain because the court did not give an instruction on future loss of earnings. But no request was made for such instruction and no objection was made by either party to the instruction given on the court's own motion which authorized the jury to consider "any loss of earnings" resulting from appellee's in-

jury, if any, in fixing his damages. Under this state of the record appellants are in no position to claim a prejudicial omission by the trial court.

Nor do we concur in appellants' final contention that the verdict is excessive. "Under our well-established rule the amount of recovery in these personal injury cases is for the jury's fair determination and when supported by substantial testimony we do not disturb the verdict unless it is shown to have been influenced by prejudice or so grossly excessive as to shock the conscience of the court." *Grandbush* v. *Grimmett*, 227 Ark. 197, 297 .S. W. 2d 647. According to appellee's proof he had suffered loss of earnings of $700 or $800 at the time of the trial with a prospect of loss of future earnings because of his inability to work, and had incurred medical expenses of $77.00. He also received painful and disabling injuries from which he still suffered at the time of the trial if the testimony on his behalf is credible. While the verdict for $6,500.00 is generous we cannot say it is so grossly excessive that it may not be permitted to stand.

Affirmed.