WAGNON *v.* PORCHIA.

5-2806                                          361 S. W. 2d 749

Opinion delivered November 19, 1962.

*Bernard Whetstone,* for appellant.

*Lamar Smead, James M. Rowan, Jr.,* and *Shackleford & Shackleford,* for appellee.

ED F. McFADDIN, Associate Justice. This case results from a traffic mishap which occurred on July 30, 1960, when a pickup truck driven by J. W. Wagnon was struck by a car driven by the appellee, Raymond Porchia. Wagnon was killed and Porchia was injured. Porchia filed action against the estate of Wagnon, claiming that the collision was entirely the fault of Wagnon. Mrs. J. W. Wagnon, as Special Administratrix, filed answer, denying that Wagnon was negligent; and she also cross-

complained against Porchia for damages, alleging that his negligence caused the collision and the death of Wagnon. Wagnon carried liability insurance, and his insurance carrier effected a settlement with Porchia and the claim of Porchia against the Wagnon estate was settled and dismissed;[1] but the settlement by the Insurance Company did not affect the claim of Mrs. Wagnon, as special administratrix, against Porchia. That claim was tried before a jury and resulted in a verdict and judgment for Porchia. It is from that trial that the present appeal is prosecuted.

I. *Motion To Strike Answer To Cross Complaint.* Porchia's original complaint was filed on October 14, 1960. On November 2, 1960, Mrs. Wagnon filed her answer and cross-complaint; and the answer to the cross-complaint was not filed by Porchia until April 5, 1961. Because of such delay, the appellant, on September 28, 1961, moved that the answer to the cross-complaint be stricken and Porchia found to be in default, citing in support of such motion § 27-1137 Ark. Stats.; *Pyle* v. *Amsler,* 227 Ark. 785, 301 S. W. 2d 441; and *Walden* v. *Metzler,* 227 Ark. 782, 301 S. W. 2d 439. The Trial Court denied the motion to strike; and, under the facts shown by the evidence, we hold such ruling to be correct.

Mrs. Wagnon was represented by another attorney when her answer and cross-complaint were filed; and that attorney continued in the case until after April 14, 1961, when the insurance company settled the claim of Porchia against the Wagnon estate. Mrs. Wagnon's original attorney then withdrew from the case and she retained her present counsel. The answer to the cross-complaint was filed while Mrs. Wagnon's original attorney represented her, and he never claimed a default

---

[1] The Order of Dismissal recites:
"IT IS THEREFORE, BY THE COURT, CONSIDERED, ORDERED AND ADJUDGED That plaintiff's complaint is dismissed with prejudice and that this dismissal fully releases and forever discharges J. W. Wagnon and Mrs. J. W. Wagnon, special administrator of the estate of J. W. Wagnon, Central Surety and Insurance Corporation and all agents, successors and assigns and all other persons, firms, and corporations, of and from any and every claim, demand and cause of action whatsoever which the plaintiff now has or may hereafter have against the said defendants."

and testified that he had no idea of claiming one. He remained in the case until after April 14, 1961. It is easy to see that from the time of the filing of Mrs. Wagnon's cross-complaint until the insurance company effectuated its settlement, there were negotiations in progress and such negotiations accounted for the failure of Porchia's attorneys to file the answer to the cross-complaint. It was not until the original complaint was settled and it was seen that the negotiations were ended that it became necessary to file the answer to the cross-complaint. So the Trial Court was correct in refusing appellant's motion to strike the answer to the cross-complaint. See *Easley* v. *Inglis,* 233 Ark. 589, 346 S. W. 2d 206.

II. *Exclusion Of Evidence.* The traffic collision between the Porchia car and the Wagnon pickup truck occurred on U. S. Highway No. 79; and both vehicles were going in the same general direction. Porchia was traveling northerly from Stephens to Camden, and he overtook and passed a truck driven by the witness, Gene Kesner. This passing of the Kesner truck was less than a half mile from the place where the collision subsequently occurred. Kesner testified that he continued to travel 55 miles per hour; that Porchia was traveling 75 miles an hour when he passed the Kesner truck; that after passing the Kesner truck Porchia increased his speed to 85 miles an hour; that when Kesner last saw the Porchia car it was traveling 85 miles an hour and "fishtailing",[2] that the Porchia car rounded a curve so Kesner did not continuously see the Porchia car, but the mishap occurred 175 yards from the curve. Kesner was traveling 55 miles an hour and when he reached the curve the collision had already occurred 175 yards away. In short, when Kesner last saw the Porchia car, it was traveling 85 miles per hour and the collision occurred only 175 yards farther down the road.

---

[2] This word "fish-tailing" is very descriptive, as used by the witness, and as a verb found in Webster's Third New International Dictionary as: "to move with a side to side or whipping motion of the stern . . . "

The Court refused the above mentioned testimony of the witness Kesner; and this occurred:

"The Court: I think his testimony about where he passed him, and how he passed him almost a half mile back wouldn't be competent testimony, because it is too remote from the scene of the accident. What was he doing at the time of the accident, that is the thing that is proper here. And the other time the closest was 175 yards.

"Mr. Whetstone: He said he was going faster than 85 miles an hour at that time.

"The Court: I think that testimony is too remote, as to the scene of the accident.

"Mr. Whetstone: How fast he was going 175 yards before the collision?

"The Court: He said he observed him as he went down the hill, and then as he went out of sight he was fish-tailing."

The ruling of the Trial Court is challenged by the appellant; and we hold that the Kesner testimony was admissible and the Trial Court was in error in excluding it. Appellant cites and relies on two Arkansas cases. The first is *Mo. Pac. Trans. Co.* v. *Mitchell*, 199 Ark. 1045, 137 S. W. 2d 242, in which a witness was permitted to testify that when the Missouri Pacific bus passed the witness four or five miles from the scene of the accident, the bus was going 75 miles an hour and that the bus continued to drive rapidly until it passed out of view. It is true that in the cited case other witnesses testified that the bus continued at a high and dangerous rate of speed; but, in holding that the questioned testimony was admissible, we cited from Blashfield's Cyclopedia of Automobile Law and Practice, Vol. 9, § 6171, as follows:

"Generally speaking, any evidence of conditions leading up to or surrounding an automobile accident, which will throw light on the question of whether a traveler was in exercise of due care at the time of the

accident, is admissible, in an action for injuries growing out of such accident.''

The second Arkansas case relied on by appellant is *Jelks* v. *Rogers*, 204 Ark. 877, 165 S. W. 2d 258, wherein a witness testified as to the speed of a truck which passed him three blocks away from the intersection. Of that testimony, we said:

''We are unable to agree with the contention that the testimony of Berry Provence as to the speed of the truck when it passed him, about three blocks south of the intersection, was inadmissible. It was competent as a circumstance tending to show the speed of the truck at the time of the collision.''[3]

To sustain the ruling of the Trial Court excluding the proffered testimony, appellee relies on *Schwam* v. *Reece,* 213 Ark. 431, 210 S. W. 2d 903. In that case the Court refused to allow a witness to testify as to the speed and manner in which the defendant was driving the bus *on another trip* about thirty minutes prior to the accident, and two or three miles from the scene of the collision. In holding that the ruling of the Trial Court was correct, Justice Millwee, in referring to the case of *Pugsley* v. *Tyler,* 130 Ark. 491, 197 S. W. 1177, distinguished it from the two cases here relied on by appellant, by using this language:

''That case, like the one at bar, is to be distinguished from those cases involving the admissibility of evidence where it is shown that the speed at which the driver was traveling was one continuous act of negligence and not a separate and different act from the one involved in the collision. See *Mo. Pac. Trans. Co.* v. *Mitchell,* 199 Ark. 1045, 137 S. W. 2d 242; *Jelks* v. *Rogers,* 204 Ark. 877, 165 S. W. 2d 258.''

In the case at bar, the excluded testimony of Kesner was that the Porchia car was going 85 miles an hour

[3]It will be observed that in *Jelks* v. *Rogers* the testimony related to a speed three blocks, or more than 900 feet, from the scene of the collision, whereas, in the case at bar, the testimony of Kesner as to the speed of the Porchia car was when the car was 175 yards, or 525 feet, from the scene of the collision.

when he last saw the car a distance of only 175 yards before the collision. A car traveling 85 miles an hour is going in excess of 41 yards a second, so the collision occurred less than five seconds after the Porchia car was last observed by Kesner as traveling at a speed of 85 miles an hour. Certainly neither the distance of 175 yards nor the time lapse of five seconds could render the testimony of Kesner too remote. We hold that Kesner's proffered evidence was not too remote, and should have been admitted.[4]

III. *Permitting Appellees To Argue The Settlement Of The Original Complaint.* Since the case is being reversed and it is possible that there will be a new trial, we think it proper to mention this point raised by the appellant. In the closing argument appellee's attorney told the jury, over appellant's objection, that Porchia's claim had been settled; and said:

"He got paid for his damages and there is no complaint about that . . . if he had not been in the right the people that found out all about it . . . would not have settled and paid Porchia off. Now I want you to think about that when you go out there to deliberate on this case. According to the evidence in this case they settled with Porchia a short time after this happened, and paid him for whatever his damages were."

We think this argument was improper. Our search has not revealed a case like this one, in which an insurance carrier has settled with the plaintiff and the defendant has continued to prosecute the cross-complaint against the original plaintiff. Either the jury should have been fully informed about the whole matter, or all argument on the point should have been silenced by the Court. We reach the conclusion that the better practice is for the Court to merely tell the jury that the original complaint is out of the case, that it has been disposed

---

[4] In 46 A. L. R. 2d page 9 there is a splendid annotation entitled, "Admissibility, in action involving motor vehicle accident, of evidence as to manner in which participant was driving before reaching scene of accident." Also in *Comins* v. *Scrivener* (10th Circuit), 214 F. 2d 810, our case of *Mo. Pac.* v. *Mitchell*, 199 Ark. 1045, 137 S. W. 2d 242, is cited as being in accord with the general rule.

of, that it is not a matter before the jury, and that the jury will not speculate about it. Thus, neither side can use the settlement of the original complaint in any way. The Trial Court attempted in the case at bar to make such a ruling because in the instructions he told the jury:

"You are instructed that you are not to speculate or consider with reference to any other possible claims or litigation growing out of this collision but you are to confine your deliberations and considerations solely to the merits of this single cause of action of the Wagnons against Raymond Porchia. You are instructed that in making your findings in this case that the jury is not required to speculate as to what happened or as to any phase of the case but a verdict should be, and must be, based upon a preponderance of the evidence or testimony."

The instructions were proper: the vice was in allowing the appellee's attorney to make the argument which we have quoted.

For the error in refusing the proffered testimony of the witness Kesner, and for the error in the improper argument, the judgment is reversed and the cause is remanded.