HOLLAND *v.* RATLIFF.

5-3409                                   384 S. W. 2d 950

Opinion delivered December 21, 1964.

*John Lofton, Jr., Ben McCray,* for appellant.

*Robert N. Hardin, O. Wendell Hall, Louis Tarlowski,* for appellee.

CARLETON HARRIS, Chief Justice. This litigation relates to an award for damages sustained by T. J. Ratliff, appellee herein, when Ratliff's automobile was allegedly struck by one driven by Allen Holland, appellant herein. In his complaint, Ratliff alleged that his car was struck from the rear by one driven by appellant, causing the Ratliff vehicle to overturn, and resulting in the injuries

to appellee complained of; there were further allegations of intoxication and willful and wanton misconduct on the part of Holland, and the complaint sought punitive damages. On trial, the jury returned a verdict in favor of appellee in the sum of $15,000.00, and from the judgment entered in accordance therewith, appellant brings this appeal. For reversal, appellant asserts that the court erred in giving appellee's Instructions Nos. 9 and 10 on the measure of damages, erred in permitting appellee to introduce a mortality table showing appellee's life expectancy, and erred in failing to instruct the jury that there could be no award of punitive damages. We proceed to a discussion of the points mentioned.

Instruction No. 9 set out the various elements of damage which the jury might consider in fixing an award, if any, for appellee. As listed in the instruction, these were as follows:

"1. The nature, extent, duration, and permanency of his injury.

2. The reasonable expense of necessary medical care, treatment and services received, and the present value of the reasonable expenses of medical care, treatment and services reasonably certain to be received in the future.

3. The pain, suffering and mental anguish experienced in the past and reasonably certain to be experienced in the future.

4. The value of time lost and the present value of time, earnings, profits, and salaries reasonably certain to be lost in the future.

5. The present value of the loss of ability to earn in the future.

6. The difference in market value of Ratliff's vehicle immediately before and immediately after the occurrence; in determining this difference you may take into consideration the reasonable cost of repairs."

The instruction was generally and specifically objected to, the specific objection contending that there was no testimony to establish permanency of the injury, or length of duration; that the evidence was insufficient

to permit the jury to reasonably determine the loss of profits or earnings in the future; that there was no evidence to show the present value of the automobile, nor testimony that would enable the jury to make a determination of the value of the vehicle before and after the accident. We disagree in the main with appellant's contention.

The evidence reflects that Ratliff spent eleven days in the hospital, was in a plaster body cast for fourteen weeks, and thereafter wore a metal and leather body brace, which was still being worn on the date of trial; there was testimony that the brace would have to be worn for some months thereafter. Further testimony by Dr. H. Austin Grimes reflected that Ratliff had suffered a compression fracture of a vertebra in his spine, and a partial or complete destruction of a disc. X-rays revealed an abnormal boney proliferation, and the injury had caused an abnormal curvature of the spine forward. Dr. Grimes stated that the injury was a painful one, and that Ratliff would have to wear the steel and leather brace for at least a year; that pain would continue. Further testimony by the doctor was to the effect that Ratliff's normal movement would be impaired; that appellee would have to be particularly careful to avoid hurting himself, and that any type of occupation requiring bending would be difficult for Ratliff to perform. With regard to the permanency of the injury, Dr. Grimes stated that the least on this type of injury would be "in the neighborhood of ten to fifteen percent disability" to the body as a whole.

It is true that the doctor testified that he could not answer with certainty as to the extent of the disabiliy, but that is hardly unusual. It would be rare indeed, except in cases of injuries that would obviously cause a total permanent disability, for a doctor to testify specifically as to any degree of permanent injury. However, Dr. Grimes testified as an expert, and gave his opinion, based on the experiences and knowledge he had acquired in the medical field. We think this evidence was sufficient to permit the jury to consider the extent, duration, and permanency of the injuries sustained by

Ratliff; also, to consider the pain and suffering experienced in the past, and reasonably certain to be experienced in the future. The introduction of the mortality table was likewise permissible. Both matters were mentioned by the late Justice Minor W. Millwee in the case of *Abraham* v. *Jones,* 228 Ark. 717, 310 S.W. 2d 488.

"Appellants also argue the court erred in permitting the introduction of the mortality table showing appellee's life expectancy. The only objection urged at the trial was that this testimony was immaterial because there was no evidence of any future loss of earnings or disability. On this point we think the trial court correctly held that the testimony offered by appellee was sufficient to warrant a jury finding for future loss of earnings and disability. This testiomny, although contradicted, was to the effect that appellee was still suffering pain and unable to perform his usual occupation as a farm laborer at the time of the trial. Similar evidence has been held sufficient to sustain a verdict for future loss of earnings and disability."

Appellant argues that the court erred in including the word "salaries" in the instruction, inasmuch as there was no evidence that appellee had ever worked for a salary. No specific objection was made to the inclusion of this word, and we therefore do not consider this argument.

A vigorous attack is also made on the use of the word "profit," but we find no merit in this contention. The evidence reflected that Ratliff had been engaged in working for himself by building batteries and bird boxes. He testified that he was earning between $200.00 and $300.00 per month prior to the injuries complained of, but that he was not able to engage in the battery repair business at the time of trial because of inability to lift a battery; that he had earned approximately $100.00 during the month prior to the trial. Appellant cites authority to the effect that, as a general rule, recovery is not allowed for the loss of business or profits from invested capital or labor of others, irrespective of the

prominence of the part in the business taken by the injured person.

There is much conflict in the authorities relative to the right to prove the loss of profits to the business of an injured party occasioned by his inability to give personal attention to the business, but where one is the sole owner of, and laborer in, a business, it appears that evidence of profits is clearly admissible. As far back as 1915, this court, in *St. Louis, I. M. & S. Ry. Co.* v. *Eichelman,* 118 Ark. 36, 175 S.W. 388, quoting from a Pennsylvania case, said:

" 'Profits derived from capital invested in business can not be considered as earnings, but in many cases profits derived from the management of a business may properly be considered as measuring the earning power. This is especially true where the business is one which requires and receives the personal attention and labor of the owner.' * * *

"It is permissible always to prove one's capacity for and disposition to work, and any special qualifications which one has which tends to increase his earning capacity may be shown. And it was, therefore, competent here to show what appellee's duties were in connection with his business; what his qualifications were for discharging those duties; what the services of one similarly qualified would have been worth to this business; and the extent to which appellee had been rendered unable to discharge his customer duties."

The court, in the *Eichelman* case, ruled that certain evidence had been improperly admitted, but the inadmissible evidence related to accumulated profits from invested capital and the labor and services of a co-partner. In *Coca-Cola Bottling Co. of Southeast Arkansas* v. *Jones,* 226 Ark. 953, 295 S.W. 2d 321, we said:

"* * * The plaintiff, who owned and conducted his own business, was incapacitated for several weeks by his injuries. His absence from the grocery store involved a financial loss that the jury were entitled to consider.

Various phrases have been used to describe the compensable loss sustained when a self-employed person is disabled. We have said that 'profits derived from the management of a business may properly be considered as measuring the earning power. This is especially true where the business is one which requires and receives the personal attention and labor of the owner.' *St. Louis, I. M. & S. Ry. Co.* v. *Eichelman,* 118 Ark. 36, 175 S.W. 388. Much to the same effect is the statement that the damages are to be measured by the value of the proprietor's services during the period of his injury."

The case of *Yost* v. *Studer,* 227 Ark. 1000, 302 S.W. 2d 775, related to a dentist who had been injured in a collision and had lost time from his practice. The proof reflected that Yost lost about two weeks from his work, and, on appeal, the appellant contended that the court erred in refusing to submit to the jury the question of whether Yost had been damaged by loss of time from the practice of his profession. As authority for his position, appellant relied upon *Coca-Cola Bottling Co. of Southeast Arkansas* v. *Jones, supra.* This court rejected this contention, stating:

"The situation in the case at bar is quite different from the *Jones* case. Here, when plaintiff finished his case, not a scintilla of evidence had been introduced as to any damages he may have sustained because of loss of time. The jury had the benefit of no evidence whatever to be guided by in determining such alleged damages. Any verdict based on such alleged loss of time would have been pure speculation. There was no inkling as to whether such loss, if any, was $50.00 or $5,000.00. In these circumstances, it would have been utterly impossible for the jury to have reached an intelligent conclusion as to such alleged damages."

In the instant case, evidence was offered as to earnings before and after the injuries, and was admissible to aid the jury in fixing the value of appellee's time.

Appellant also objected specifically to that part of the instruction dealing with the market value of Ratliff's

vehicle. Here, appellant's objection has merit. The only evidence relative to the value of Ratliff's automobile was testimony to the effect that it was worth $300.00 before the accident. There was absolutely no evidence as to its value after the collision, though it does appear from the testimony that appellee continued to drive the car.

Appellant's final assertion of error is based on the court's refusal to instruct the jury that there could be no award of punitive damages. In his opening statement, counsel for appellee told the jury:

"Now the recklessness that is charged against Allen Holland is such that I believe that when the Court instructs you that he will instruct that for wanton conduct that shows disregard to others, you may award punitive damages as punishment. That will be a matter for you to decide. When you have heard all the evidence in this case, I think you will come to the conclusion that a substantial judgment should be awarded merely to compensate Tom Ratliff, and to pay him for the loss he has sustained. You may or may not determine that in addition he ought to be punished by an additional amount. Thank you very much."

When the presentation of evidence was concluded and the jury instructed, appellee offered an instruction defining punitive damages and permitting a recovery for such damages if the jury found that Holland's acts were committed willfully or wantonly. The court refused the instruction. Appellant also asked the court to give an instruction telling the jury that appellee was *not* entitled to punitive damages, but the court refused to do so, and error is asserted. It is contended that Holland was entitled to this instruction to counteract any effect that the opening statement of appellee's counsel might have had on the jury. We do not agree. Counsel had told the jury that he believed that the court would instruct relative to punitive damages—but this was not done, and we do not see the need for this negative instruction. At any rate, while the request was made, appellant did not

offer any instruction in this regard, and therefore, cannot be heard to complain.

As previously stated, there was no evidence to justify a recovery for the damage to appellee's car, and the judgment should accordingly be reduced by the highest figure used in giving the value of that vehicle. This figure was $300.00, and the judgment should be reduced to $14,700.

The judgment is affirmed on the condition that remittitur is entered as indicated within seventeen calender days; otherwise, the judgment will be reversed, and the cause remanded for a new trial.