LARRY D. VAUGHT, Judge
Appellant Larry Buckley appeals the Clark County Circuit Court's order denying his motion for a new trial after the jury awarded appellee Kasey Summerville $36,000 in her personal-injury lawsuit stemming from a car accident involving both parties. We affirm.
On November 2, 2011, at approximately 11:12 a.m., Summerville was driving eastbound on West Pine Street in Arkadelphia, and Buckley, while traveling northbound on a cross street, failed to yield at the stop sign and collided with the passenger side of Summerville's vehicle. The impact of the collision caused Summerville's vehicle to be pushed across the lane of oncoming traffic and off the road. Summerville suffered injuries to her neck, back, shoulder, and hip.
Summerville's primary physician, Dr. Hagood, testified that he treated Summerville for her injuries from the wreck, including neck and low-back pain, and that he prescribed prednisone and pain medication. Specifically, Dr. Hagood treated Summerville for wreck-related symptoms on November 8, 2011, November 22, 2011, and January 20, 2012, but his subsequent records did not indicate whether later treatments were related to the accident. Dr. Hagood testified that he was not qualified to give an opinion as to her condition, permanent impairment, or disability because *537 he had not treated her for over a year before trial. Dr. Hagood stated that while he had not been aware that Summerville was seeing a chiropractor, Dr. Bomar, he respected Dr. Bomar and would have no reason to disagree with Dr. Bomar's opinion. Dr. Hagood testified that Summerville had not sustained a permanent injury as a result of the car accident.
Dr. Bomar testified that in his initial examination of Summerville, he noticed how much pain she had been living with. He diagnosed her with chronic sciatic neuritis. He testified about the mechanics of how the side impact of her severe car crash caused her injuries, and the biomechanics of her physical impairment that had not been previously treated, causing a cycle of pain.
Dr. Bomar displayed x-rays he had taken of Summerville during treatment and explained how they showed a tearing and shearing of the ligaments in Summerville's neck that had led to abnormal slippage of the bones. The x-rays further showed that Summerville's neck was abnormally straight where it should be curved, which is indicative of past trauma. Dr. Bomar testified that the severe side impact Summerville suffered caused the shearing of the ligament due to the inertia of the hit. Dr. Bomar described to the jurors how pain such as Summerville's can come and go. He stated that based on his medical opinion it was more probable than not that Summerville's medical conditions and symptoms were caused by the collision in November 2011. He testified that, in addition to taking x-rays, he had completed orthopedic and neurological tests, palpations, and a motion test on her pelvis and cervical spine. He treated her with cold and hot management, various forms of physical therapy, and spinal manipulation to set the bones. He demonstrated and explained to the jurors that her injury was permanent and would affect how her spinal discs functioned in the future, causing her to lose the cushion and bearing in her discs over time leading to chronic inflammation and chronic-pain syndrome. He said that, due to her injuries, Summerville will have an advanced rate of aged degeneration in the spinal segments in her neck, low back, and pelvis. Dr. Bomar testified that Summerville will also require future medical treatments due to the injuries suffered in the accident.
Summerville testified that before the wreck, she would have the normal aches and pains related to strenuous activity but nothing out of the ordinary. She testified that before the wreck, she did not have pain in her neck or take pain medication consistently. She described how the side impact of the wreck was severe enough to cause her vehicle to be pushed across a lane of traffic and into a vacant lot. She testified that, after the wreck, she had started taking over-the-counter pain medication and prescription pain medication at least a couple of times a week to help with her consistent pain. After experiencing little improvement from the treatment prescribed by Dr. Hagood, Summerville began seeing Dr. Bomar. She testified that she still takes pain medications and can no longer stand for periods longer than thirty minutes, walk for more than a mile, wear high-heeled shoes, sit for long periods of time, participate in group-exercise classes, or drive long distances without having to stop often.
Summerville's husband of thirty years testified that before the accident she had been in good health but that after the accident she started having problems traveling, quit walking with him, quit exercising, and stopped being able to pick up children.
Summerville's counsel requested that the court take judicial notice of a statutorily *538 created mortality table so that he could use it in his closing statement. Defense counsel objected and was overruled by the circuit court, which took judicial notice of the table. Summerville's counsel closed his case-in-chief without introducing the mortality table, based on the mistaken belief that it had been introduced into evidence when the court took judicial notice of it. The court asked the attorneys to approach the bench and questioned Summerville's counsel as to when he expected to enter the mortality table as previously discussed. The court recognized that there had been a misunderstanding and stated that the table had not been entered into evidence. Summerville's counsel then requested that he be allowed to reopen his case-in-chief in order to enter the mortality table. The court allowed the introduction of the mortality table, and the trial proceeded. Summerville then rested, and Buckley moved for directed verdict, which was denied. The defense did not present any additional testimony or evidence. The court then held a second jury-instruction conference, at which the defense renewed a previous objection to the giving of AMI Civil 2219 regarding the mortality table. The court overruled the objection.
In his closing argument, Summerville's counsel argued that, based on the mortality table, Summerville could expect to live another thirty-two years. He then argued that Summerville should be awarded $4,000 per year from the date of the accident until the trial (for a total of $20,000) and $1,000 per year for the remaining thirty-two years of her life, for a total award of $52,000. The jury found in favor of Summerville and awarded her $36,000. Buckley moved for a new trial, arguing that the court's sua sponte decision to reopen Summerville's case and allow her to introduce the mortality table was an irregularity in the proceedings and an error of law that prevented him from receiving a fair trial and that the jury award was excessive. The court denied the motion for new trial, and this appeal follows.
A motion for new trial is addressed to the sound discretion of the trial court, and the trial court's refusal to grant it will not be reversed on appeal unless an abuse of discretion is shown. Sharp Co. v. Ne. Ark. Planning & Consulting Co. , 269 Ark. 336, 602 S.W.2d 627 (1980). An abuse of discretion means a discretion improvidently exercised, i.e., exercised thoughtlessly and without due consideration. Ford Motor Co. v. Nuckolls , 320 Ark. 15, 894 S.W.2d 897 (1995) ; Nazarenko v. CTI Trucking Co. , 313 Ark. 570, 856 S.W.2d 869 (1993). When a motion for a new trial is made on the ground that the verdict is clearly contrary to the preponderance of the evidence, we will likewise affirm the denial of the motion if the jury's verdict is supported by substantial evidence. Barringer v. Hall , 89 Ark. App. 293, 300, 202 S.W.3d 568, 573 (2005).
When an award of damages is alleged to be excessive, we review the proof and all reasonable inferences therefrom in the light most favorable to the appellee and determine whether the verdict is so great as to shock the conscience of the court or demonstrates passion or prejudice on the part of the jury. Vaccaro Lumber v. Fesperman , 100 Ark. App. 267, 269, 267 S.W.3d 619, 621 (2007). Remittitur is appropriate when the compensatory damages awarded are excessive and cannot be sustained by the evidence. Id. at 269, 267 S.W.3d at 621. The standard of review in such a case is whether there is substantial evidence to support the verdict. Id. , 267 S.W.3d at 621. We will review a trial court's denial of a motion for new trial or order of remittitur based on excessive damages for abuse of discretion. Id. , 267 S.W.3d at 621.
*539 Buckley's first point on appeal alleges that the court created an irregularity in the proceedings that prevented him from having a fair trial when it sua sponte convened a bench conference to alert Summerville's counsel to the fact that the mortality table had not been entered into evidence and then allowed Summerville to reopen her case and introduce the mortality table. While the procedure was unusual, we disagree that it created reversible error. We have previously held that "[a] court should not reopen a case except for good reason and on proper showing." Gilbow v. Crawford , 2015 Ark. App. 194, at 6, 458 S.W.3d 750, 754. We have also explained that the decision whether to reopen the record lies within the trial court's discretion and that the court should reopen evidence when it would serve the interests of justice and cause no undue disruption of the proceedings or unfairness to the party not seeking to have it reopened. Sugarloaf Dev. Co., Inc. v. Heber Springs Sewer Improvement Dist. , 34 Ark. App. 28, 805 S.W.2d 88 (1991). Generally, we will not reverse the trial court's decision to admit or refuse evidence in the absence of an abuse of that discretion and a showing of prejudice. Mason v. Mason , 319 Ark. 722, 895 S.W.2d 513 (1995) ; Acker Constr., LLC v. Tran , 2012 Ark. App. 214, 396 S.W.3d 279 ; Simpson v. Braden , 2011 Ark. App. 250, 2011 WL 1166848.
Here, counsel had already requested and been granted judicial notice of the mortality table for the express purpose of using it in his closing argument. The court's act of clarifying (outside the hearing of the jury) that the table had not yet been introduced into evidence and then allowing counsel to reopen his case in order to do so did not have any practical effect on how it was ultimately used. Summerville's counsel was initially mistaken as to the meaning and effect of having the court take judicial notice of the table, and the sua sponte bench conference simply corrected that misunderstanding and allowed the trial to proceed as originally intended.
Buckley also argues that the court's actions prejudiced him by influencing the jury through the appearance of partiality toward Summerville's case. We disagree. It seems highly unlikely that any juror who simply saw Summerville rest and then, following a bench conference, reopen its case and introduce the mortality table, would have the impression that the court had intentionally favored or advantaged Summerville.
Buckley next argues that there was insufficient evidence of permanent injury to (1) support introduction of the mortality table and corresponding jury instruction and (2) support the jury's verdict. Both arguments hinge on whether Summerville provided sufficient evidence of a permanent injury. Our supreme court has previously held that, in order to admit a mortality table, there must be sufficient evidence of either future medical treatment or permanent injury. Holland v. Ratliff , 238 Ark. 819, 822, 384 S.W.2d 950, 952 (1964). Here, Summerville did not seek compensation for past or future medical expenses, but she did present evidence that she suffered a permanent injury. Buckley's challenge is to the sufficiency of that evidence. Dr. Bomar testified at length about the nature, extent, and symptoms of Summerville's injuries. He specifically testified that, based on his medical opinion, it was more probable than not that Summerville's injuries had been caused by the collision. Most importantly, he testified that her injury was permanent and would affect how her spinal discs functioned in the future, would cause her an advanced rate of age-related degeneration, would continue to cause her pain, and would require future medical *540 treatment. Summerville and her husband testified about the extent to which the injury has interfered with her life. This case is similar to Holland , 238 Ark. at 822, 384 S.W.2d at 952, in which the Arkansas Supreme Court found a doctor's testimony was sufficient to support a finding of permanent injury. We affirm as to the sufficiency of the evidence supporting Summerville's claim of permanent injury.
Buckley's final point on appeal is a challenge to the amount of the jury's verdict. Buckley argues that the $36,000 verdict was excessive. Where an award of damages is alleged to be excessive, we review the proof and all reasonable inferences most favorably to the appellee and determine whether the verdict is so great as to shock the conscience of the court or demonstrate passion or prejudice on the part of the trier of fact. See Houston v. Knoedl , 329 Ark. 91, 947 S.W.2d 745 (1997). "In determining whether the amount was so great as to shock the conscience, we consider such elements of damage as past and future medical expenses, permanent injury, loss of earning capacity, scars resulting in disfigurement, and pain, suffering, and mental anguish." Bill Davis Trucking, Inc. v. Prysock , 301 Ark. 387, 391, 784 S.W.2d 755, 757 (1990). Buckley argues that these factors weigh in favor of remittitur because (1) Summerville did not introduce any evidence of past and future medical expenses and (2) there was insufficient evidence of permanent injury. However, Buckley provides no citation or legal authority for his contention that all factors must be met, and as discussed above, we hold that there was sufficient evidence of permanent injury. Summerville also provided testimony about her pain and suffering, which was corroborated by Dr. Bomar and Summerville's husband. Juries have wide discretion in awarding damages in personal injury cases. Morrison v. Lowe , 274 Ark. 358, 625 S.W.2d 452 (1981). The jury's award does not shock the conscience of the court, and we affirm.
Affirmed.
Abramson and Hixson, JJ., agree.