696 P.2d 1010

E. Mae THOMAS, a/k/a E. Mae Patterson, Individually and as Mother and Next Friend of Cipriana and Althea Patterson, Minors, Plaintiffs-Appellees,

v.

Marjorie L. HENSON, Defendant-Appellant.

No. 7547.

Court of Appeals of New Mexico.

Nov. 6, 1984.

Mark J. Klecan, Klecan & Childress, Albuquerque, for defendant-appellant.

David A. Archuleta, Albuquerque, for plaintiffs-appellees.

Thomas A. Simons IV, Simons, Cuddy & Friedman, Santa Fe, for amicus curiae N.M. Defense Lawyers Ass'n.

William H. Carpenter, William E. Snead, Richard E. Ransom, Albuquerque, for amicus curiae N.M. Trial Lawyers Ass'n.

OPINION

BIVINS, Judge.

This appeal raises the question of whether evidence of an injured party's failure to use an available seat belt may be considered by the fact finder. Because of the public interest in this question, we allowed the New Mexico Trial Lawyers Association and the Defense Lawyers Association to file amicus curiae briefs.

Plaintiffs, a mother and her two minor daughters, brought suit to recover damages sustained in an automobile accident with the defendant. The jury found defendant 100% at fault and awarded damages to the three plaintiffs.

The trial court granted plaintiffs' pre-trial motion in limine to exclude any evidence, argument or inference relating to the plaintiffs' failure to use available seat belts. After entry of judgment for plaintiffs, defendant filed her motion for new trial raising again the seat belt issue. From the denial of this motion and the judgment, defendant appeals.

Pursuant to NMSA 1978, Civ.App.Rule 7(d) (Repl.Pamp.1984), the parties stipulated to the record on appeal. Plaintiffs devote a significant portion of their brief to questioning the underlying facts set forth in the stipulation and suggesting the failure by defendant to preserve error. We reject these contentions as empty. Both sides stipulated to the record and agreed that:

> Evidence indicated that although seat belts were installed in the Plaintiff's vehilcle [sic], the seat belts were not being used at the time of this accident and that the non-use [sic] of available seat belts enhanced the injuries suffered by the Plaintiffs.

The parties also stipulated that the only issue on appeal is: "[W]hether evidence of non-use [sic] of seat belts should be admissible under New Mexico law." This issue requires that we decide whether the "seat belt" defense should be adopted

in New Mexico. We answer the question by holding that where there is competent evidence to prove that a person acted unreasonably in failing to use an available seat belt under the circumstances of the particular case, and that failure produced or contributed substantially to producing at least a portion of plaintiff's damages, then the fact finder should be permitted to consider this factor together with other evidence in deciding whether damages otherwise recoverable should be reduced. Plaintiffs include counterclaimants. Because we apply this doctrine prospectively, we do not apply it to the case before us and, therefore, affirm the judgment in favor of plaintiffs.

To better understand the present state of the law on the seat belt defense, a brief reference to its early development is useful. By 1964 the majority of the states had enacted legislation requiring the installation of safety belts in automobiles manufactured or assembled after a certain date for use at least in the front seats. The New Mexico Legislature passed such legislation in 1963. *See* NMSA 1978, § 66–3–874 (Repl.Pamp.1984). Defendants in automobile accident cases responded immediately by raising the "seat belt" defense. Courts were initially reluctant to recognize this defense for a variety of reasons, the most notable appearing to be: under contributory negligence the injured plaintiff should not be barred from recovery for failure to use a seat belt when that failure did not cause the accident; *see, e.g., Amend v. Bell,* 89 Wash.2d 124, 570 P.2d 138 (1977); *Miller v. Miller,* 273 N.C. 228, 160 S.E.2d 65 (1968); lack of consensus as to the utility of seat belts in preventing or reducing the severity of injuries; *see Petersen v. Klos,* 426 F.2d 199 (5th Cir.1970); and a reluctance to impose a common law duty when the legislature had not made use of the seat belt mandatory. For a discussion of the law in this area, see generally Kircher, *The Seat Belt Defense— State of the Law,* 53 Marq.L.Rev. 172 (1970); Hoglund and Parsons, *Caveat Viator: The Duty to Wear Seat Belts Under Comparative Negligence Law,* 50 Wash.L.

Rev. 1 (1974–75); Note, *Buckling Up For Safety: Should Florida Reconsider the Seat Belt Defense?,* 13 Stetson L.Rev. 160 (1983); Note, *The Seat Belt Defense: A Comprehensive Guide for the Trial Lawyer and Suggested Approach for the Courts,* 56 Notre Dame Law. 272 (1980–81); Note, *The Seat Belt Defense: Should Coloradoans Buckle Up for Safety?,* 50 U.Colo.L.Rev. 375 (1978–79); *See also* Annot., 80 A.L.R.3d 1033 (1977); Annot., 92 A.L.R.3d 9 (1979); and Annot., 95 A.L.R.3d 239 (1979).

With many states abandoning contributory negligence in favor of comparative negligence, the first objection has been viewed by at least one court to present no obstacle to adoption of the seat belt defense. *See, e.g., Bentzler v. Braun,* 34 Wis.2d 362, 149 N.W.2d 626 (1967) (recognizing nonuse of seat belt may constitute such negligence as will permit apportionment of damages under comparative negligence). 95 A.L.R.2d 239, *supra,* at 242. Further, more recent studies demonstrate that seat belts do indeed save lives and lessen the severity of injuries. The United States Department of Transportation, National Highway Traffic Safety Administration, National Safety Belt Usage Program, *Progress and Assessment Report on the National Safety Belt Usage Program* (Sept.1983) summarizes the results of its most recent study as follows:

> Safety belts and child safety seats, *when they are used and used properly,* are estimated to be 50–60 percent effective in preventing serious or fatal injuries to persons involved in highway vehicle crashes. Use of the protection devices by all occupants last year could have saved 15,000 to 18,000 lives and avoided more than 200,000 moderate-to-severe injuries. About 180 lives are saved and about 3,000 serious injuries are avoided every year for each percentage point of occupants that use safety belts—e.g., with a usage rate of 14 percent, the current rate, about 2,500 lives are saved and 42,000 serious injuries are avoided. The monetary implications of this are

astounding as it would result in an estimated savings of billions of dollars due to lives saved and injuries avoided or reduced.

*Id.* at 2 (emphasis in original). Report cited in footnote 3 to dissenting opinion of Shaw, J., in *Insurance Co. of North America v. Pasakarnis,* 451 So.2d 447, 455 (Fla. 1984). Moreover, with the wide publicity given to these facts, there no longer exists a shield of ignorance. As the authors of one article put it, "The reasonably prudent person has gained an education from which he cannot retreat." 50 Wash.L.Rev. at 13.

Where earlier cases were reluctant to impose a duty to wear seat belts and felt that this was peculiarly a legislative matter, recent decisions from several states, either expressly or impliedly, have recognized such duty. *See, e.g., Insurance Co. of North America v. Pasakarnis; Spier v. Barker,* 35 N.Y.2d 444, 363 N.Y.S.2d 916, 323 N.E.2d 164 (Ct.App.1974). *Cf. Selgado v. Commercial Warehouse Co.,* 88 N.M. 579, 544 P.2d 719 (Ct.App.1975) (public policy of a state fixing a statutory duty to wear seat belts rests with legislature) (hereinafter *"Selgado II"*).

In response to these developments in tort law and studies as to the effectiveness of seat belts, it was inevitable that courts would be called upon to re-examine earlier opinions, as we do here, or take a look at the defense for the first time, in light of these changes. For a status of the seat belt defense as of 1980 in the different jurisdictions, *see* 56 Notre Dame Law. 272, *supra,* at 274.

It is against this background that we are asked to adopt the seat belt defense as part of the continuing development of comparative negligence law in New Mexico.

Those jurisdictions which have considered the seat belt defense as well as commentators who have addressed the subject appear to suggest at least three approaches: (1) the plaintiff's nonuse of an available seat belt constitutes negligence per se; (2) in failing to make use of an available seat belt, plaintiff has not complied with a standard of conduct which a reasonably prudent person would have pursued under similar circumstances, and therefore may be found negligent; and (3) by not fastening the seat belt, plaintiff may, under the circumstances of a particular case, be found to have acted unreasonably and in disregard for his or her best interests and, therefore, should not be allowed to recover those damages which would not have occurred had his or her seat belt been fastened. *See Spier v. Barker; Insurance Co. of North America v. Pasakarnis;* 53 Marq.L.Rev. 172, *supra,* at 173; 80 A.L.R.3d 1033, *supra.* In addition or as a variation of the above, the North Carolina Supreme Court in *Miller v. Miller* alluded to what has been referred to as the "exceptional circumstance" theory under which a plaintiff's failure to fasten a seat belt may constitute negligence where, for example, he or she is warned in advance that the car door on his side has a defective lock and might come open at any time. See discussion of theory in 56 Notre Dame Law., *supra,* 278–80, 288–92.

This court has previously considered the "seat belt" defense in two separate opinions involving the same litigation. *See Selgado v. Commercial Warehouse Co.,* 86 N.M. 633, 526 P.2d 430 (Ct.App.1974) (hereinafter *"Selgado I"*); and *Selgado II.* In both *Selgado* cases this court upheld the trial court's refusal to give defendants' requested instructions to the effect that Mrs. Selgado could not recover for any damages she could have prevented had she worn her seat belt. Thus, the seat belt defense was raised under the theory of mitigation of damages, sometimes referred to as the doctrine of "avoidable consequences." *Selgado I* did not reach the question of the validity of the tendered instructions because of lack of evidence to support giving them. *Selgado II* squarely addressed the issue and held that the trial court properly refused to give defendants' requested instructions; that it properly instructed the jury to disregard any evidence relating to the nonuse of seat belts; and that it properly refused defendants' offer of expert testimony on seat belts and its application

to that case. In so holding we said that the use or nonuse of a seat belt involves pre-accident conduct and therefore does not fall within the doctrine of "avoidable consequences" which covers post-accident conduct. Thus, [evidence of nonuse of a seat belt would be irrelevant on the minimization of damages.] Further, this court noted that it could find no authority, statutory or otherwise, which imposed a duty to fasten a seat belt, suggesting that the public policy of a state fixing a statutory duty to wear seat belts rests with the legislature.

Defendant in the case before us does not advocate the seat belt defense under the mitigation of damages theory or avoidable consequences doctrine addressed in *Selgado II*. Instead, she argues that an injured party's nonuse of an available seat belt reflects "fault" which should be admitted for the fact finder's consideration under New Mexico's developing comparative negligence law.

Relying on the recent case of *Duran v. General Motors Corp.*, 101 N.M. 742, 688 P.2d 779 (Ct.App.1983), defendant also seeks to analogize the seat belt issue to crashworthiness cases, pointing out that the fact that nonuse of seat belts does not ordinarily cause the initial collision should make no difference if it causes or enhances the ultimate injury.

Plaintiffs, on the other hand, argue that adoption of comparative negligence should not change policies implicit in *Selgado II*, and refer us to cases from other jurisdictions which have refused to adopt a seat belt defense notwithstanding a transition from contributory to comparative negligence. *See, e.g., Melesko v. Riley*, 32 Conn.Supp. 89, 339 A.2d 479 (1975); *Amend v. Bell; 95 A.L.R.3d 239, supra,* at 241.

The negligence per se approach has apparently been rejected by the courts because the legislation which does not require the use of seat belts "cannot be considered a safety statute in a sense that it is negligence *per se* for an occupant of an automobile to fail to use available seat belts." *Bentzler v. Braun*, 34 Wis.2d 362, 149

N.W.2d at 639. *See also Spier v. Barker; Pasakarnis;* 80 A.L.R.3d 1033, *supra,* at 1037.

■ A plaintiff's negligence is applicable only if the injured plaintiff's failure to use due care causes, in whole or in part, the accident, as opposed to when it merely exacerbates or enhances his or her injuries. *Spier v. Barker; Pasakarnis.*

In arguing for the comparative negligence approach, defendant in this case refers to the following language from *Claymore v. City of Albuquerque, aff'd sub nom, Scott v. Rizzo*, 96 N.M. 682, 634 P.2d 1234 (1981) as authority for allowing the fact finder to consider an injured party's nonuse of an available seat belt as a cause of his or her damages:

The thrust of the comparative negligence doctrine is to accomplish (1) apportionment of fault between or among negligent parties *whose negligence proximately causes any part of a loss or injury,* and (2) apportionment of the total damages resulting from such loss or injury in proportion to the fault of each party.

96 N.M. at 688, 634 P.2d 1234 (emphasis added).

NMSA 1978, UJI Civ. 16.2 (Effective until October 1, 1984) and 22.18 (Cum.Supp. 1984) defining contributory negligence and providing the form of verdict for comparative negligence cases, respectively, lend support to defendant's argument since these instructions speak of negligence proximately causing damages as opposed to the accident or event giving rise to those damages. Further, and perhaps of even more significance, NMSA 1978, UJI Civ. 3.8 (Repl.Pamp.1980), in defining "proximate cause" speaks also in terms of the proximate cause of an injury. In addressing identical language to UJI Civ. 3.8 used in Mississippi, the United States district court in *Glover v. Daniels*, 310 F.Supp. 750 (N.D. Miss.1970), held that causation related to the injury rather than the accident or event, and that a jury instruction on the seat belt defense was permissible where

substantial evidence showed that the plaintiff's failure to fasten the seat belt was causally connected to his injuries. In that case, defendant failed to establish a causal connection, so the court did not have to determine if the instruction correctly stated the law in. Mississippi. *Cf. Petersen v. Klos* (taking a less favorable view toward admissibility).

■ Unless it can be shown that failure to use an available seat belt somehow caused the accident, an issue not before us in this case, then the seat belt defense should be considered, if at all, only in assessing damages. There remains to be determined upon what theory the defense may lie.

New York and Florida appear to have adopted the seat belt defense under the mitigation of damages, sometimes referred to as the avoidable consequences doctrine. *Spier v. Barker; Pasakarnis.* As previously noted, this court rejected that approach in *Selgado II* in 1975 on the basis that use or nonuse of a seat belt invokes pre-accident conduct and the mitigation of damages doctrine applies only to post-accident conduct, such as where the injured plaintiff fails to seek proper medical care after the accident. *See* NMSA 1978, UJI Civ. 18.11 (Repl.Pamp.1980) and the "Directions for Use" which follow. The distinction between pre-accident and post-accident conduct has been questioned, *see* W. Prosser, *The Law of Torts*, § 65 (4th ed. 1971), and in *Spier v. Barker* rejected. In that case the high court of the state of New York said:

We concede that the opportunity to mitigate damages prior to the occurrence of an accident does not ordinarily arise, and that the chronological distinction, on which the concept of mitigation damages rests, is justified in most cases. However, in our opinion, the seat belt affords the automobile occupant an unusual and ordinarily unavailable means by which he or she may minimize his or her damages *prior* to the accident. Highway safety has become a national concern; we are told to drive defensively and to "watch

out for the other driver". When an automobile occupant may readily protect himself, at least partially, from the consequences of a collision, we think that the burden of buckling an available seat belt may, under the facts of the particular case, be found by the jury to be less than the likelihood of injury when multiplied by its accompanying severity.

363 N.Y.S.2d 920, 323 N.E.2d at 168 (emphasis in original).

While we agree with this reasoning and believe the distinction between pre-accident and post-accident is artificial, in our view, the better approach is found in the "apportionment of damages" rule. 2 Restatement (Second) of Torts, § 465, comment c (1965) provides in part:

Where ... there are distinct harms, or a reasonable basis is found for the division of a single harm, the damages may be apportioned, and the plaintiff may be barred only from recovery for so much of the harm as is attributed to his own negligence.

The comment notes that such apportionment is commonly made under the avoidable consequences rule, but goes on to state:

Such apportionment may also be made where the antecedent negligence of the plaintiff is found not to contribute in any way to the original accident or injury, but to be a substantial contributing factor in increasing the harm which ensues. There must of course be satisfactory evidence to support such a finding, and the court may properly refuse to permit the apportionment on the basis of mere speculation.

Of course, in order to adopt the apportionment of damages rule, there must be a duty imposed upon the occupant to wear an available seat belt. We have already said that *Selgado II* found no such duty, statutory or otherwise, and suggested that the public policy to fix a statutory duty to fasten a seat belt rests with the legislature. Plaintiffs urge us to continue that position and refrain from imposing a court-made duty. The Trial Lawyers Association concurs, suggesting that the New Mexico Leg-

islature soon will have to reconsider the wisdom of mandatory seat belt use as a result of a recently adopted regulation by the federal Department of Transportation. The department has decided to require automatic occupant protection in all passenger automobiles based on a phased-in schedule beginning in 1988, unless, before 1986, two-thirds of the population are covered by mandatory seat belt laws. Federal Motor Vehicle Safety Standard, 49 Fed. Reg. 28962, 28963 (July 17, 1984).

The reference to "duty" in the preceding paragraph does not mean duty in the sense of an obligation of conduct to another person. Rather, duty is used in the sense of conduct which involves an unreasonable risk of harm to the actor himself. *See* Prosser, *supra*, at 418. Such a duty exists, and has existed historically in New Mexico. See original Uniform Jury Instructions Civil 12.3 and 12.4 adopted in 1966. Current UJI Civ. 16.4 states that "[e]very person has a duty to exercise ordinary care for his own safety * * * *" NMSA 1978, UJI Civ. 16.4 (Repl.Pamp. 1980). The duty to exercise care for one's own safety had, however, been limited in its application to damages by defining avoidable consequences in terms of "due care after the commission of the tort." *Rutledge v. Johnson,* 81 N.M. 217, 220, 465 P.2d 274 (1970). This opinion does not change the definition of "avoidable consequences," *Rutledge,* or "mitigation of damages" as explained in the Directions for Use to UJI Civ. 18.11. Those phrases apply to post-accident conduct. Our holding does no more than apply the duty to exercise care for one's own safety to pre-accident conduct which causes damages; here, the failure to use a seat belt. Such damages may not be recovered from a defendant because such damages resulted from plaintiff's conduct. The method to be used in preventing recovery is to apportion the damages. To assuage the concern of the Trial Lawyers Association that pre-accident conduct will include a plaintiff's physical conditioning, or lack thereof, we emphasize that a defendant will still take the victim as he finds him and be liable for the damages

the defendant causes. Where, however, damages are caused by the plaintiff's failure to care for his own safety (not his physical condition), plaintiff may not recover those damages.

In the past the appellate courts of this state have not shied away from their continuing responsibilities to ensure that the law remains fair and realistic as changes occur. *See, e.g., Hicks v. State,* 88 N.M. 588, 544 P.2d 1153 (1975) (abrogating sovereign immunity); *Scott v. Rizzo* (adopting comparative negligence); *Lopez v. Maez,* 98 N.M. 625, 651 P.2d 1269 (1982) (recognizing tavern-keeper's liability); *Vigil v. Arzola,* 22 SBB 868 (Ct.App.1983), *rev'd on other grounds,* 101 N.M. 687, 687 P.2d 1038 (1984) (recognizing cause of action for wrongful discharge). In an area of the law peculiarly appropriate for judicial development, we have no hesitation in extending a common law duty when deemed needed. Tort law is such an area. Therefore, we recognize, as part of the continuing duty to exercise reasonable care for his or her own safety, an occupant of an automobile has a duty to fasten an available seat belt or similar safety restraint device unless the circumstances dictate otherwise. We can foresee that in cases such as pregnancy, a seat belt might enhance damages rather than reduce them. Under these circumstances, it would not be reasonable to require the occupant to wear a seat belt.

Further, we believe the adoption of the seat belt defense as part of the apportionment of damages fits within the developing law of comparative fault as contemplated in *Scott v. Rizzo.*

Therefore, based on convincing studies as to the effectiveness of seat belts in saving lives and reducing injuries and as part of the developing law of comparative negligence, we adopt the seat belt defense under the apportionment of damages concept. Where there are distinct harms, or a reasonable basis for the division of a single harm, the damages may be apportioned, and the plaintiff may not recover for so much of the harm proximately caused by

his or her failure to use an available seat belt, unless excused under the circumstances of the case. Our holding applies when a plaintiff has failed to exercise due care for his own safety by failing to use an available seat belt, and injury is caused by that failure. It does not apply to the converse. Where an available seat belt has been used and injuries are enhanced by such use, there is no basis for reducing plaintiff's damages on the basis of plaintiff's conduct. *See* Snyder, *The Seat Belt as a Cause of Injury*, 53 Marq.L.Rev. 211 (1970).

Our holding today extends an existing common law duty. We agree with *Selgado II* that Section 66–3–874, which requires equipping vehicles with seat belts, does not impose a statutory duty to use them. Two statutes, however, impose statutory duties. NMSA 1978, Sections 66–7–356 and –369 (Cum.Supp.1984) impose duties, respectively, as to use of protective helmets by motorcyclists and use of child restraint devices. Section 66–7–356(B) states: "Failure to wear a safety helmet as required in this section shall not constitute contributory negligence." Section 66–7–369(C) states: "Violation of this section shall not constitute evidence of negligence." These provisions go to negligence in causing the accident, and not to apportionment of damages. We have rejected the contention that the seat belt defense applies to negligence in causing the accident. Our holding authorizes the defense only in apportioning damages. Thus our holding is consistent with, and not barred by, the above statutes. We turn to consider objections voiced by those opposing the adoption of this defense.

Plaintiffs in their brief adopt four reasons given by the Supreme Court of Washington in *Amend v. Bell* for rejecting the seat belt defense under comparative negligence. At least two of those reasons were answered by Judge Schwartz, in his dissenting opinion in *Insurance Co. of North America v. Pasakarnis*, 425 So.2d 1141 (Fla.Dist.Ct.App.1982), which dissent a year later was adopted by and became the basis for the Supreme Court of Florida's opinion in *Pasakarnis*, which adopted the seat belt defense. We identify the *Amend v. Bell* reasons with Judge Schwartz's responses and responses of our own.

First, "The defendant should not diminish the consequences of his negligence by the failure of the plaintiff to anticipate the defendant's negligence in causing the accident itself." 570 P.2d at 143. Judge Schwartz, after rejecting this argument as being without substance, said:

> Indeed, it is so commonly known that automobile accidents *must* be anticipated that the necessity of exercising reasonable care to minimize their effects forms the basis of an entire body of products liability law, as established in Florida * * The most basic principles of evenhandedness preclude the imposition of a different standard of foreseeability depending on which party asserts it.

425 So.2d at 1144 (emphasis in original) (citations omitted). We agree. It would create an incongruous situation to impose liability on manufacturers of automobiles for failing to create a safe environment on the basis that those manufacturers should be able to reasonably anticipate the possibility that accidents will occur, and at the same time hold the occupants free of any duty to take precautions for their own safety on the basis that they do not have to anticipate involvement in an accident.

"Second, seat belts are not required in all vehicles. Defendant should not be entitled to take advantage of fortuitous circumstance that plaintiff was riding in a car so equipped." 570 P.2d at 143. Judge Schwartz considered this argument so fallacious as being unworthy of reply or even inclusion in the body of his opinion. *See* footnote 6, 425 So.2d at 1144. We would only add that in the twenty or so years since mandatory installation legislation, there are not likely to be many automobiles on the highways today that are not equipped with seat belts.

Third, while conceding that it is not controlling as to the standard of conduct, the *Amend v. Bell* court found persuasive the fact that a majority of motor-

ists do not habitually use their seat belts. See *Miller v. Miller*. Citing to the September 1983 Report on the National Safety Belt Usage Program, quoted earlier in this opinion, Justice Shaw in his dissenting opinion in *Pasakarnis* noted that only 14% of the motoring public used seat belts in the first half of 1983, up 3% from 1982. In *Sanchez v. J. Barron Rice, Inc.*, 77 N.M. 717, 427 P.2d 240 (1967), the supreme court held that a "standard is not to be nullified or made inapplicable by proof of custom which conflicts with it." 77 N.M. at 723. In that case defendants contended an ordinance should not apply if the custom was not to obey the ordinance. The standard of care is geared to what a reasonably prudent person would do and does not depend upon public acceptance of that standard.

■■■■■ Fourth, the *Amend v. Bell* court said that allowing the seat belt defense would lead to a "veritable battle of experts as to what injuries would have or have not been avoided had the plaintiff been wearing a belt." 570 P.2d at 143. The *Spier v. Barker* court addressed this issue by stating that it underestimates the abilities of those trained in accident reconstruction, and overlooks the fact that segregation of injuries is already being made in cases, such as where the jury apportions damages between the original tort-feasor and a physician who negligently treats plaintiff's injuries. We would add that a plaintiff faces a similar burden in a crashworthiness case of having to segregate those injuries received in the initial impact from those received in the second collision. *See Duran v. General Motors Corp.; Huddell v. Levin*, 537 F.2d 726 (3d Cir. 1976). Proof of aggravation of a pre-existing injury involves a similar assessment. *Duran*, 101 N.M. at 697, 688 P.2d 779. In either case the burden of proving enhancement of injuries is not an easy one. In most instances competent expert testimony will be required. As one author noted, in order for a defendant asserting the seat belt defense to establish a prima facie case, proof of the following should be considered:

(1) the particular crash behavior of the subject vehicle;

(2) the trajectory of the claimant's body in the accident;

(3) the relationship of the vehicle crash events to occupant kinematics;

(4) the particular injuries suffered;

(5) the trajectory which a restrained occupant would have taken;

(6) the extent of lesser injuries which the restrained occupant would have sustained as a result of the impacts he would have made with the vehicle.

Bowman, *Practical Defense Problems— The Trial Lawyer's View*, 53 Marq.L.Rev. 191, 198 (1970). While we do not purport to set out the requirements of proof here, nor limit it necessarily to the considerations above, suffice to say that we would anticipate in most cases proof of a causal connection between nonuse of a seat belt and injuries will not likely be established by an expert making conclusory statements using familiar phrases such as "within a reasonable probability." If defendant hopes to get to the jury, there must be a rational basis to support the opinion. *See Duran v. General Motors Corp.*

The Trial Lawyers Association argues that imposition of the defense will result in added cost to plaintiffs in meeting the defendant's proof. While this may be true, it pales in comparison to the untold billions, not to mention the loss of life and severity of injuries, as estimated in the September 1983 report by the U.S. Department of Transportation, that could be saved if motorists and their passengers utilized this safety device. We do not presume that the motoring public will, as a result of this opinion, immediately start buckling up; nevertheless, in light of the alarming statistics of the deaths and injuries attributable to the nonuse of seat belts quoted earlier, we would be most reluctant to adopt a rule of law that would discourage that result.

■■■■ The Trial Lawyers Association also advances additional objections which it contends require either the rejection of the

defense or certification of the issue to the supreme court. They argue that adoption of the defense would reintroduce an "all or nothing" concept as to a plaintiff's *enhanced* injuries which *Scott v. Rizzo* prohibits. We disagree. *Scott v. Rizzo* adopted comparative negligence which permits a plaintiff to recover even though his or her fault contributed to the injuries. Under the comparative fault principle, plaintiff cannot now recover for that portion of the injuries attributable to his or her fault. Under the seat belt defense, as adopted herein, plaintiff's damages can be reduced *only* for that portion of the damages which plaintiff could have avoided by use of the seat belt. This constitutes apportionment, not a return to contributory negligence.

The Trial Lawyers Association further argues that, however formulated, the seat belt defense could only be adopted by the supreme court because it would conflict with existing uniform jury instructions. They point to NMSA 1978, UJI Civ. 12.6 (Repl.Pamp.1980) which provides that a driver has a right to assume other drivers will obey the law unless put on notice to the contrary. Quite aside from the fact that this instruction applies only to drivers, this instruction applies only to operation of a vehicle at the accident stage, and does not in any way address the damage stage. While an occupant of an automobile could not in most instances anticipate the nature or type of accident, we agree with the New York high court that highway safety has become such a national concern that motorists are requested to drive defensively, so that the inconvenience of buckling an available seat belt may be found slight in comparison with the severity of injuries that may result from nonuse. *Spier v. Barker.*

The Trial Lawyers Association argues that the specific jury instruction for comparative negligence, NMSA 1978, UJI Civ. 22.20 (Cum.Supp.1984) could not possibly accommodate a seat belt defense. This objection would not prevent the type of interrogatories adopted by the supreme court of Florida in *Pasakarnis*, which we recommend. *Scott v. Rizzo.* We do not quote the interrogatories. As to their application, *Pasakarnis* provides that the total amount of plaintiff's damages is to be first reduced by applying the percentages of negligence. *See* UJI Civ. 22.20 "[T]hen reduce this amount by the percentage attributable to plaintiff's failure to wear the seat belt." 451 So.2d at 454.

Other arguments advanced by plaintiffs and the Trial Lawyers Association have either been covered in this opinion or are found to be without merit.

Although the term "seat belt" has been used in this opinion because that was the device involved, the apportionment of damages principle would also apply to similar safety restraint devices.

We must now determine when to apply the seat belt defense. Given the fact the plaintiffs to this lawsuit could have reasonably assumed under *Selgado II* that New Mexico would not recognize the defense under other theories, we apply the doctrine prospectively. We hold that the rule herein adopted shall apply to cases filed after the date this opinion becomes final, to cases pending in the trial court at the time this opinion becomes final, and to cases remanded after appeal where the issue has been preserved. *See Scott v. Rizzo.* Therefore, we affirm the judgments in favor of plaintiffs. Costs of appeal shall be borne by defendant.

The court wishes to express its appreciation to the parties and amici for their valuable assistance in briefing this issue.

IT IS SO ORDERED.

DONNELLY, C.J., and WOOD, J., concur.