1997 SD 120

**Georgine L. LOOKS TWICE,
Plaintiff and Appellant,**

v.

**Julian WHIDBY and Evelyn Whidby,
D/B/A Stockmans Lounge and Li-
quors, Defendants and Appellees,**

and

**Jean Adele Ghost, Deloris L. Long
Soldier and Jacqueline Judith
Palmier, Defendants.**

No. 19716.

Supreme Court of South Dakota.

Considered on Briefs Sept. 10, 1997.

Decided Oct. 15, 1997.

Michael Abourezk of Abourezk Law Firm, Rapid City, for plaintiff and appellant.

Donald P. Knudsen, G. Verne Goodsell of Gunderson, Palmer, Goodsell & Nelson, Rapid City, for defendants and appellees.

SABERS, Justice.

[¶ 1.] Three women attacked plaintiff in a bar fight, causing her serious physical injuries. She sued her attackers and the bar owners. The jury found against the attackers, but for the bar owners. Plaintiff appeals the denial of her motions for judgment notwithstanding the verdict and new trial. We reverse and remand.

### FACTS

[¶ 2.] On March 6, 1993, Georgine Looks Twice was seated with a friend in Rapid City's Stockman's Lounge when she was attacked by three women (Jean Ghost, Deloris Long Soldier, and Jacqueline Palmier). Before the fight was stopped, Looks Twice was thrown to the floor, beaten, and kicked; toward the end of the attack, part or all of her nose was bitten and severed from her face.

[¶ 3.] Stockman's adjoins a liquor store, both of which are owned by the Whidbys. On the night of the attack, the bar was staffed by one female bartender (Rosalie Means) and one female server (Carmelita Yellow Thunder). Evelyn Whidby was on duty in the liquor store. Means testified that she knew trouble was brewing for approximately ten minutes before the attack actually began. In fact, she testified to the following conversation with Ghost:

Ghost: If I get in a fight in here, are you going to kick me out?

Means: Well, if you start it, I have to.

Ghost: Well, I guess you're going to kick me out.

There was apparently some delay in summoning the police,[1] but once called they responded immediately and stopped the fight, although too late to prevent the disfigurement to Looks Twice' face.

[¶ 4.] Prior to trial, Whidbys made a motion to prevent Looks Twice from introducing evidence to show the bar had a history of prior incidents of criminal activity requiring police intervention. Looks Twice claimed that Whidbys were negligent in failing to

---

**1.** The bar and the liquor store were equipped with "panic buttons" to summon the police. The panic buttons are tracked by the Rapid City Police Department's "Central Monitoring Alarm." Means did not activate the panic button the night of the assault on Looks Twice until the attack was well under way.

take precautionary measures, such as hiring an on-site security guard or "bouncer." She sought to introduce police records pertaining to Stockman's to show that violence in the bar was foreseeable and that Whidbys should have known they needed security to prevent such an attack.

[¶ 5.] The trial court instructed Looks Twice to submit "a list of the incidences and the detail supporting those incidences to establish the similarities ... lay out as much detail as you can." The court indicated that evidence regarding fights in the bar would be admissible, but that evidence of fights outside the bar would likely be excluded.

[¶ 6.] The Rapid City Police Department keeps files on each business which has a liquor license; these files contain information pertaining to police calls to each establishment. Looks Twice submitted an offer of proof which consisted of 1) an index to the Rapid City Police Department's Stockman's file; 2) excerpts from the police logs; 3) excerpts from the dispatch logs; and 4) four detailed incidents of violence at Stockman's. The trial court admitted two of these last four incidents, ruling that they could be used as substantive evidence since they occurred inside the bar. The other items were not admitted.

[¶ 7.] Following a trial, the jury found in favor of Looks Twice in her suit against Ghost, Long Soldier, and Palmier, but against her in her claim against the Whidbys. Looks Twice made an alternative motion for judgment notwithstanding the verdict or new trial. The trial court granted Looks Twice a new trial against the three women solely on the basis of inadequate damages. This was not appealed.

▮▮▮ [¶ 8.] The court denied Looks Twice' motion for new trial against the Whidbys.

2. Looks Twice appealed another evidentiary ruling; however, she cited no authority in her brief to support this argument and did not mention the issue in her reply brief. Therefore, the issue is waived. "Failure to cite authority violates SDCL 15–26A–60(6) and constitutes a waiver of that issue." *State v. Satter,* 1996 SD 9, ¶ 20, 543 N.W.2d 249, 253 (citation omitted).

3. The trial court admitted only the following evidence of prior criminal activity:

Looks Twice appeals, claiming the court erred in denying use of the material as substantive evidence. She also claims she should have been permitted to use it to impeach Whidbys' expert when he testified that the number of calls to the police did not merit additional security.[2]

## STANDARD OF REVIEW

▮▮▮ [¶ 9.] "[A] motion for a new trial is addressed to the sound discretion of the trial court; we will not overturn the court's ruling unless it appears affirmatively from the record there has been an abuse of discretion." *Robbins v. Buntrock,* 1996 SD 84, ¶ 16, 550 N.W.2d 422, 427 (citations omitted). Evidentiary rulings made by the trial court are presumed correct and are also reviewed under an abuse of discretion standard. *State v. Goodroad,* 1997 SD 46, ¶ 9, 563 N.W.2d 126, 129 (citing *State v. Oster,* 495 N.W.2d 305, 309 (S.D.1993)). "The test is not whether we would have made the same ruling, but whether we believe a judicial mind, in view of the law and the circumstances, could have reasonably reached the same conclusion." *Id.* (citing *State v. Rufener,* 392 N.W.2d 424, 426 (S.D.1986)).

[¶ 10.] **WHETHER THE TRIAL COURT ABUSED ITS DISCRETION BY EXCLUDING EVIDENCE OF PRIOR INCIDENTS OF VIOLENCE AT THE BAR, IN VIEW OF THE "TOTALITY OF THE CIRCUMSTANCES" RULE.**

▮▮▮ [¶ 11.] The trial court excluded evidence of two prior acts of violence which occurred outside the bar, as well as all of the police documents pertaining to Stockman's. The excluded incidents of prior violence were detailed in the offer of proof:[3]

> On February 18, 1993, Mr. Levi Mesteth was struck in the face, and had a tooth knocked out, while sitting in the Stockman's Bar, by a person named Arlin Knutson. This was the subject of a police investigation and a warrant was issued for Mr. Knutson.
>
> On March 29, 1992, the police were dispatched to the Stockman's Bar for an assault report. An individual named Carl Sharkey had a bar glass broken in his face, while sitting in the bar.

On August 29, 1992, Officers Edgington and Brode were off duty and had just left the police station. Both were in uniform. As they were driving home, they saw two women fighting just outside the front door of the Stockman's Lounge. They stopped and arrested one of the women for simple assault and disorderly conduct.

On March 27, 1992, a customer of the Stockman's Bar named John Top Bear was in the bar, when another individual, Don Cuny, started an argument. Top Bear got up to leave the bar and Cuny followed him out the back door. The two got into a fight and Cuny shot Top Bear with a pistol. Top Bear ran back into the Stockman's Bar where he collapsed on a table near the pool table.

[¶ 12.] The court also excluded the index to the police file. The index dates from May 24, 1986 through August 27, 1991 and lists 1) six fights, including one involving a charge of failure to vacate; 2) four assault entries (including one "possible", one "aggravated", and one "simple"); 3) seven entries indicating responses to the Central Monitoring Alarm; and 4) various other infractions, including "unwanted subjects," failure to vacate, resisting, obstructing, and theft. The police department's daily log and dispatch log were also excluded. The logs contained various entries indicating calls or alarms coming from Stockman's.

[¶ 13.] It appears that most, if not all of the evidence submitted in Looks Twice' offer of proof was confined to fights, assaults, and disturbances occurring at or near Stockman's. The trial court excluded nearly all of the evidence, stating:

The Court feels, number one, it's not establishing similarity in events. Two, it's highly prejudicial because they—it lists events that are unrelated to the situation and circumstances involving this particular case and the bar, and the minimal, if any, probative value is well outweighed by the prejudicial value, and I will deny the offer.

[¶ 14.] Looks Twice argues that the trial court erred by basing its evidentiary ruling on the "prior similar acts" rule. Under that rule, only evidence of similar incidents is admissible. This court expressly rejected the "prior similar acts" rule in favor of a "totality of the circumstances" rule in *Small v. McKennan Hospital*, 403 N.W.2d 410, 412–13 (S.D.1987) (*Small I* ):

[V]arious trial courts may differ as to what is a "similar" incident and may have trouble defining time and territory limits for purposes of determining foreseeability.... [S]trict adherence to the "prior similar acts" rule is unduly restrictive and places too great a burden on the plaintiff.

*Id.* (citations & internal quotations omitted); *see also Small v. McKennan Hosp.*, 437 N.W.2d 194, 199 (S.D.1989) (*Small II* ) (discussing *Small I* ):

[F]oreseeability must be analyzed in light of all the circumstances [and] depends on the facts in each individual case. Prior incidents, whether similar or not, were properly held to constitute evidence of foreseeability. Such incidents are helpful in establishing foreseeability, but not required to satisfy this element. In other words, such other incidents are not by themselves controlling in establishing foreseeability, but can be considered with all the other facts and circumstances relating to the issue.

[¶ 15.] Whidbys conceded that they owed a duty to protect their customers from "an unreasonable risk of harm at the hands of a third party, another bar patron." However, the factual question whether they breached their duty remained. "[T]he fact finder generally determines whether a duty has been breached." *City of Colton v. Schwebach*, 1997 SD 4, ¶ 8, 557 N.W.2d 769, 771. Whether there was a history of violence at the bar which 1) made the attack on Looks Twice foreseeable and 2) should have alerted the Whidbys to the necessity of instituting preventative measures was a factual question for the jury. *Small I*, 403 N.W.2d at 413. Furthermore, the correct rule of law in such a case is the "totality of the circumstances rule."

The duty to foresee a risk of harm is dependent upon all the surrounding facts and circumstances and may require fur-

ther investigation or inquiry before action is taken.

*Id.* (citation omitted).

[¶ 16.] As noted, most of the excluded evidence related to fights, assaults, and disturbances occurring at or near Stockman's. This was far more "similar" and far more detailed than the evidence held admissible in *Small I.* In that case, the estate of a woman who was raped and murdered after she was abducted from a hospital parking ramp brought an action against the hospital for negligence. Neither the hospital nor the parking ramp had ever been the scene of a similar crime. However, in reversing the grant of summary judgment to the hospital, this court listed the following prior criminal activity in and around the ramp and the hospital as admissible under the "totality of the circumstances" rule:

> [R]eports of stolen car batteries, stolen gasoline, smashed windows, broken antennaes, intoxicated and disorderly people, and lug bolts being taken off or loosened. In addition, from time to time the ramp had been littered with beer cans and alcoholic beverage bottles, and on one occasion human feces were found in the elevator. Security personnel, in deposition testimony, also stated that they were aware of two or three complaints about nurses being followed near the hospital and were also aware of an incident that occurred approximately twelve to fifteen years prior where a nurse was hit over the head and dragged toward a car. The security officers also reported incidents where they took knives away from people in and around the hospital. At least one security officer was concerned about the nurses' safety at the ramp and reported being told by people that they would not park in the ramp due to the dangers involved.

*Small I,* 403 N.W.2d at 411.

[¶ 17.] Here, the trial court incorrectly concluded that this evidence had minimal probative value which was substantially outweighed by its prejudicial value simply because it was "unrelated to the situation and circumstances involving this particular case and the bar[.]" Clearly, that test was rejected in *Small I, supra.*

[¶ 18.] Just because admission of the evidence may have damaged the Whidbys' defense does not render the evidence unfairly prejudicial. Evidence which is unfairly prejudicial has the capacity to persuade the jury by illegitimate means which results in one party having an unfair advantage. "Evidence is not prejudicial merely because its legitimate probative force damages the defendant's case." *State v. Barber,* 1996 SD 96, ¶ 19, 552 N.W.2d 817, 821 (citation omitted); *see also State v. Moeller,* 1996 SD 60, ¶ 92, 548 N.W.2d 465, 486 ("Unfair prejudice is associated with facts that arouse the jury's hostility or sympathy for one side without regard to the probative value of the evidence.") (citation omitted).

[¶ 19.] By applying the rejected "prior similar acts" rule, the trial court withheld probative and relevant evidence from the jury. This evidence was probative because it tended to establish a pattern of violence and criminal activity at Stockman's. *See Isaacs v. Huntington Memorial Hosp.,* 38 Cal.3d 112, 211 Cal.Rptr. 356, 362, 695 P.2d 653, 659 (1985) (relied upon by the *Small I* court in abandoning the rule) ("A rule that limits evidence of foreseeability to prior similar incidents deprives the jury of its role in determining [foreseeability]."); *see also Welch v. Automotive Co.,* 528 N.W.2d 406, 411 (S.D. 1995) ("It is up to the trier of fact to weigh the testimony, resolve conflicting testimony, and evaluate the credibility of witnesses."). The exclusion of this evidence forced Looks Twice' expert to testify to a need for security measures without allowing him to state the factual basis from which he drew his conclusions. *See Small I,* 403 N.W.2d at 413 (expert allowed to testify regarding the security inadequacies of the parking ramp).

[¶ 20.] The trial court did not follow precedent in determining whether this evidence was admissible under *Small I. Cf. State v. White,* 1996 SD 67, ¶ 16, 549 N.W.2d 676, 681 (finding no abuse of discretion where trial court adhered to precedent in making evidentiary ruling). Accordingly, the trial court's error constitutes an abuse of discretion. We are not satisfied that the jury verdict would have been the same if the evidence had been

admitted; therefore, its exclusion constitutes prejudicial error. *See Jack Rabbit Lines, Inc. v. Neoplan Coach Sales, Inc.,* 1996 SD 80, ¶ 10, 551 N.W.2d 18, 21 ("To be prejudicial, errors must produce some effect upon the final result and affect rights of the party assigning it.") (citations omitted).

[¶ 21.] The "totality of the circumstances" rule does not preclude application of SDCL 19–12–3 (FedREvid 403), which provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

The trial court may still require the plaintiff to submit "meaningful evidence of the nature and facts" of the prior fights, assaults, and disturbances which prompted police intervention. *Cf. State v. Chapin,* 460 N.W.2d 420

(S.D.1990).[4]  This is not to say that the plaintiff must prove the "similarity" between fights that the trial court apparently sought; however, it does mean that the trial court could rightfully exclude evidence of events which a bouncer could not prevent.[5]  Accordingly, we reverse and remand for a new trial where evidence relating to prior fights, assaults, and disturbances which prompted police intervention should be admitted; the trial court may require Looks Twice to provide background evidence of each of the events she seeks to introduce.[6]

[¶ 22.] MILLER, C.J., and AMUNDSON, KONENKAMP and GILBERTSON, JJ., concur.

4.  In *Chapin,* this court reversed the trial court's admission of certain "bad act" evidence under SDCL 19–12–5 (FedREvid 404(b)) because the trial court admitted the defendant's "rap sheet" without requiring "meaningful evidence of the nature and facts of the prior convictions." 460 N.W.2d at 422.

5.  For example, evidence of vandalism or theft in the parking lot does not contribute to the jury's analysis of whether there was a history of violence which should have prompted the Whidbys to employ better security measures inside the bar.  Moreover, a fight in the parking lot between persons who never even entered the bar may properly be excluded.

6.  Looks Twice also argues that her case was prejudiced because she was not permitted to use the police files to impeach Whidbys' expert witness when he testified that Stockman's did not need security personnel.  The trial court did not rule on this issue; assuming a factual basis for this evidence, our disposition of this case will permit its use for impeachment purposes on remand.