1998 SD 31

**Jeffrey A. DAVIS and Susan K. Davis, Plaintiffs and Appellants,**

v.

**Susan Rae KNIPPLING, Defendant and Appellee.**

No. 19875.

Supreme Court of South Dakota.

Argued Oct. 21, 1997.

Decided April 1, 1998.

---

Patrick T. Dougherty of Johnson, Eklund, Nicholson & Dougherty, and Rita Allen of Hagen, Wilka & Archer, Sioux Falls, for plaintiffs and appellants.

Michael J. Schaffer and Melissa C. Hinton of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for defendant and appellee.

KONENKAMP, Justice.

[¶ 1.] Drivers must slow to fifteen miles-per-hour when approaching an intersection if they have an obstructed view of other vehicles entering the intersection. Was the trial court correct in applying this rule to an intersection on a through highway? Because such highways are designed to allow traffic to maintain constant speed, we conclude the obstructed view rule was inapplicable. The court also erred in instructing the jury that failure to use a seatbelt can be considered a failure to mitigate damages. We find no abuse of discretion, however, in admitting evidence of plaintiff's purported investment income. We affirm in part, reverse in part, and remand for a new trial.

## Facts

[¶ 2.] On August 26, 1993, Jeffrey Davis was driving north on Russell Street in Sioux Falls. Russell is a four-lane thoroughfare running north and south, with a grassy median. As he approached the Louise Avenue intersection, Susan Knippling was turning left onto Russell from Louise. Neither one could see the other because their view was obstructed by a gravel truck stopped in the left turn lane on Russell. Knippling drove directly in front of Davis and he broadsided her vehicle. Davis was not wearing a seatbelt. He hit his head on the windshield, was rendered momentarily unconscious, and suffered multiple injuries.

[¶ 3.] Davis brought suit against Knippling alleging negligence in failing to yield to oncoming traffic. In her answer, Knippling denied any negligence, and asserted Davis was contributorily negligent and failed to mitigate his damages. The court denied Davis's motions in limine to prohibit mention of his failure to use a seatbelt and evidence of his business profits. The jury was instructed Davis may be considered contributorily negligent if he violated the statute which prohibits traveling more than fifteen miles per hour while crossing an intersection with an obstructed view. After a four-day trial, the jury returned a verdict for Davis, awarding him $6,824 in damages. On appeal, Davis contends the court erred by (1) instructing the jury that it may consider failure to use a seatbelt as evidence of failure to avoid or minimize injuries; (2) instructing that failure to slow to fifteen miles-per-hour at the intersection could be contributory negligence; and (3) admitting evidence of Davis's investment income in determining loss of earning capacity.

## Standard of Review

[¶ 4.] Under our standard of review, we construe jury instructions as a whole to learn if they provided a full and correct statement of the law. *Sommervold v. Grevlos*, 518 N.W.2d 733, 739 (S.D.1994); *Frazier v. Norton*, 334 N.W.2d 865, 870 (S.D.1983); *Mueller v. Mueller*, 88 S.D. 446, 450, 221 N.W.2d 39, 42 (1974). Misleading, conflicting, or confusing instructions create reversible error. *Schaffer v. Edward D. Jones &*

*Co.*, 1996 SD 94, ¶ 19, 552 N.W.2d 801, 808; *Wallahan v. Black Hills Elec. Co-op., Inc.*, 523 N.W.2d 417, 423 (S.D.1994). Nonetheless, an appellant must show not only that a particular instruction was erroneous, but also that it was prejudicial, meaning the jury probably would have returned a different verdict if the faulty instruction had not been given. *LDL Cattle Co., Inc. v. Guetter*, 1996 SD 22, ¶ 32, 544 N.W.2d 523, 530; *Sybesma v. Sybesma*, 534 N.W.2d 355, 359 (S.D.1995)(quoting *Chambers v. Dakotah Charter, Inc.*, 488 N.W.2d 63, 64 (S.D.1992)).

### Analysis and Decision

#### 1. Failure to Slow at Obstructed View Intersection

■ [¶ 5.] Citing our holding *Robbins v. Buntrock*, 1996 SD 84, 550 N.W.2d 422, the trial court instructed the jury that Davis could be found contributorily negligent if he violated SDCL 32–25–15:

> When approaching within fifty feet of and when traversing an intersection of highways when the driver's view is obstructed the maximum lawful speed shall be fifteen miles per hour. A driver's view is obstructed if at any time during the last fifty feet of his approach to such intersection, he does not have a clear and uninterrupted view of such intersection *and of the traffic upon all of the highways entering such intersection for a distance of two hundred feet from such intersection.* A violation of this section is a Class 2 misdemeanor.

(emphasis added). Although Davis may have had an obstructed view of traffic approaching the intersection, giving an instruction based upon this statute was error. The facts in *Robbins* were quite dissimilar: the intersection was not one governed by a yield sign controlling cross traffic on a through highway as we see here.

[¶ 6.] Knippling was stopped at a yield sign on Louise Avenue just before turning left onto Russell Street and into Davis's path. Her view of oncoming traffic was obstructed

by a gravel truck which had pulled into the left-hand turn lane on Russell. Davis's view of traffic on Louise Avenue was probably also obstructed—he did not recall a truck in the turn lane—but he was entitled to rely upon the yield sign controlling traffic turning onto Russell.

[¶ 7.] In South Dakota, state and local authorities designate through highways "by erecting at the entrances thereto from intersecting highways stop or yield signs." *Musilek v. Stober*, 434 N.W.2d 765, 767 (S.D.1989); SDCL 32–29–2.[1] Russell Street is clearly a "through highway." Drivers on such highways have the right-of-way, and may assume cross-traffic will stop before entering. *Musilek*, 434 N.W.2d at 767; *Roth v. Jelden*, 80 S.D. 40, 46, 118 N.W.2d 20, 24 (1962); *Grosz v. Groth*, 78 S.D. 379, 381–82, 102 N.W.2d 834, 836 (1960). Requiring drivers on through highways to slow to fifteen miles-per-hour at every intersection with an obstructed view of traffic on intersecting streets would render meaningless not only stop or yield signs on those streets, but also the purpose for these highways, to allow traffic to maintain constant speed. Of course, even drivers with the right of way have the responsibility to keep a proper lookout for other vehicles on the road. *Runge v. Prairie States Ins. of Sioux Falls*, 393 N.W.2d 538, 541 (S.D.1986). The presence of a stop or yield sign will not relieve a motorist of the duty on a through highway to use reasonable care for the safety of others. *Burmeister v. Youngstrom*, 81 S.D. 578, 581, 139 N.W.2d 226, 229 (1965); *Nelson v. McClard*, 357 N.W.2d 517, 518 (S.D.1984); *Shams v. Carney*, 518 N.W.2d 366, 368 (Iowa 1994); *Paro v. Farm & Ranch Fertilizer, Inc.*, 243 Neb. 390, 499 N.W.2d 535, 540–41 (1993).

■ [¶ 8.] On the other hand, "[t]his Court has repeatedly held that the failure of a driver of a motor vehicle to see a [favored] vehicle ... at an intersection constitutes negligence...." *Kallis v. Beers*, 375 N.W.2d

---

1. SDCL 32–29–2 provides:
   The department of transportation with reference to state highways and local authorities with reference to highways under their jurisdiction may designate main traveled or through highways by erecting at the entrances thereto from intersecting highways stop or yield signs. All such signs shall be illuminated at night or so placed as to be illuminated by headlights of an approaching vehicle.

642, 644 (S.D.1985); *see also Vlach v. Wyman*, 78 S.D. 504, 507, 104 N.W.2d 817, 819 (1960)(failure to come to a full stop before crossing highway); *Kundert v. B.F. Goodrich Co.*, 70 S.D. 464, 465, 18 N.W.2d 786, 787 (1945)(duty to stop and failure to do so was negligence). When on a through road protected by a yield sign at an intersection, the driver on such road may reasonably assume until the contrary is shown that a motorist approaching the intersection will stop, if necessary, look, and yield the right-of-way as required by SDCL 32–29–3. *See also Burmeister*, 139 N.W.2d at 229; *Kasper v. Carlson*, 232 Neb. 170, 440 N.W.2d 195, 198 (1989); *Muirhead v. Gunst*, 204 Neb. 1, 281 N.W.2d 207, 209 (1979); *Smith v. Kellerman*, 4 Neb.App. 178, 541 N.W.2d 59, 63 (1995); 4 Blashfield, *Cyclopedia of Automobile Law and Practice* § 114.85, at 173 (3d ed. 1965). Nonfavored drivers must proceed with extraordinary caution when entering a through highway while their view is obstructed. 4 *Blashfield* § 114.105, at 234. Knippling does not dispute she was unable to see oncoming traffic heading north on Russell Street as she approached the yield sign. Nevertheless, she proceeded to turn onto Russell, into the path of advancing traffic. The trial court erred in instructing the jury that Davis's failure to slow pursuant to SDCL 32–25–15 may be considered contributory negligence.

[¶ 9.] We need not decide whether the court's erroneous obstructed view instruction was alone prejudicial, because the jury was also instructed it may find Davis contributorily negligent if he was exceeding the posted speed limit at the time of the accident. *See* SDCL 15–6–61. In a civil case, if a general verdict is handed down and the jury could have decided the case on two theories, one proper and one improper, the reviewing court will assume it was decided on the proper theory. *Jack Rabbit Lines, Inc. v. Neoplan Coach Sales, Inc.*, 1996 SD 80, ¶ 10, 551 N.W.2d 18, 21; *Mid–America Marketing Corp. v. Dakota Indus. Inc.*, 289 N.W.2d 797, 799 (S.D.1980); *Eberle v. Siouxland Packing Co., Inc.*, 266 N.W.2d 256, 258 (S.D. 1978).

### 2. Failure to Use Seatbelt as Failure to Mitigate Damages

[¶ 10.] Drivers and other persons in the front seat of passenger vehicles must use seat belts in South Dakota. SDCL 32–38–1 (effective July 1, 1994). However, by statute, proof of failure to wear a seat belt may not be introduced as evidence in any civil litigation on the issue of mitigation of damages. SDCL 32–38–4. As the accident occurred in August 1993, these enactments are inapplicable to this case.

[¶ 11.] Relying upon dicta in *Kusser v. Feller*, 453 N.W.2d 619 (S.D.1990), the trial court instructed the jury that it may consider plaintiff's "failure to use a seatbelt as evidence that the plaintiff had failed to avoid or minimize" his injuries.

> The jury also could have concluded that Kusser failed to avoid or minimize injury by not wearing a seat belt. The jury was instructed about avoiding or minimizing injury. However, closing argument was not recorded so it is difficult to determine the impact of this point.

*Id.* at 621–22. Yet the question—whether not wearing a seatbelt can be considered failure to mitigate damages—was not directly at issue there. The *Kusser* Court may have supposed a basis for the jury's position, but it neither endorsed a rule, nor relied on one to decide the case. Accordingly, despite the existence of statutes controlling the issue for future cases, we must decide whether the mitigation doctrine applied to injured plaintiffs not wearing seatbelts before the effective date of these enactments. Whether the doctrine applies to the use of seatbelts is a question of law. *Welsh v. Anderson*, 228 Neb. 79, 421 N.W.2d 426, 428 (1988). On legal questions, this Court is obligated to reach its decision independent of the conclusion reached by the trial court. *See generally Aadland v. St. Luke's Midland Reg'l Med. Ctr.*, 537 N.W.2d 666, 668 (S.D.1995); *King v. John Hancock Mut. Life Ins. Co.*, 500 N.W.2d 619, 621 (S.D.1993).

[¶ 12.] A clear majority of states have judicially refused to admit evidence of a plaintiff's nonuse of an available seatbelt as proof of failure to mitigate damages likely to

occur in an automobile accident. *See Welsh,* 421 N.W.2d at 429; *Keaton v. Pearson,* 292 S.C. 579, 358 S.E.2d 141 (S.C.1987); *Quick v. Crane,* 111 Idaho 759, 727 P.2d 1187 (1986); *Fudge v. City of Kansas City,* 239 Kan. 369, 720 P.2d 1093 (1986); *Schaeffer v. Burdette,* 33 Ohio Misc.2d 12, 514 N.E.2d 952 (1986); *Clarkson v. Wright,* 108 Ill.2d 129, 90 Ill.Dec. 950, 483 N.E.2d 268 (1985); *State v. Ingram,* 427 N.E.2d 444 (Ind.1981); *Daly v. General Motors Corp.,* 20 Cal.3d 725, 144 Cal.Rptr. 380, 575 P.2d 1162 (1978); *Fields v. Volkswagen of America, Inc.,* 555 P.2d 48 (Okla. 1976); *Fischer v. Moore,* 183 Colo. 392, 517 P.2d 458 (1973); *Hagwood v. Odom,* 88 N.C.App. 513, 364 S.E.2d 190 (N.C.Ct.App. 1988); *Hillier v. Lamborn,* 740 P.2d 300 (Utah Ct.App.1987); *Thomas v. Henson,* 102 N.M. 417, 696 P.2d 1010 (N.M.Ct.App.1984), *aff'd in part, rev'd in part,* 102 N.M. 326, 695 P.2d 476 (N.M.1985). A few jurisdictions reason a plaintiff's failure to use an available seatbelt can be considered a substantial factor in increasing the harm, but we conclude the better approach rejects this theory.[2]

[¶ 13.] A duty to mitigate ordinarily arises only after a tortfeasor's negligent act. *Welsh,* 421 N.W.2d at 429; *Ingram,* 427 N.E.2d at 448("whether mitigation of damages has occurred looks to the acts of the injured party only after the injury has occurred"); *Hagwood,* 88 N.C.App. 513, 364 S.E.2d at 192(citing *Miller v. Miller,* 273 N.C. 228, 160 S.E.2d 65, 74 (N.C.1968)); *McCord v. Green,* 362 A.2d 720, 725–726 (D.C.1976)(citing 22 Am.Jur.2d *Damages* § 497, at 580–581 (1988))("doctrine of avoidable consequences … comes into play only after the defendant has committed the wrongful act but at a time when plaintiff still

has an opportunity to avoid the consequences in whole or in part"). A plaintiff's "preaccident" failure to fasten an available seat belt contributes nothing to the transpiring of the accident itself. Such omission occurs before a tortfeasor's negligent act and is, therefore, inconsistent with a plaintiff's later burden to minimize damages. *Hagwood,* 364 S.E.2d at 192; *Ingram,* 427 N.E.2d at 448(not buckling seatbelt is act injured party must perform before injury—mitigation of damages "looks to the acts of the injured party only after the injury has occurred"); *King Son Wong v. Carnation Co.,* 509 S.W.2d 385, 387 (Tex.Civ. App. 1974)("mitigation of damages has no application to plaintiff's actions which antedate defendant's negligence"). These decisions reflect our Court's traditional view of the mitigation doctrine. The trial court erred when it instructed the jury it may consider Davis's failure to use a seatbelt as evidence he failed to avoid or minimize his injuries.

■ [¶ 14.] The question then remains whether the error was prejudicial. *LDL Cattle Co., Inc.,* 1996 SD 22 at ¶ 32, 544 N.W.2d at 530; *Glanzer v. St. Joseph Indian School,* 438 N.W.2d 204, 209 (S.D.1989). To establish prejudice, Davis must show the jury probably would have reached a different verdict, one more favorable to him, had correct instructions been given. *LDL Cattle Co., Inc.,* 1996 SD 22 at ¶ 35, 544 N.W.2d at 530; *Chambers,* 488 N.W.2d at 64. The jury did not even award him the full amount of his medical expenses directly attributable to the accident, which were at least $10,369.87.[3] Considering the two erroneous contributory negligence instructions, our review of the record convinces us the jury probably would have reached a different result.

---

**2.** New York leads those states holding failure to wear an available seatbelt may constitute failure to mitigate damages. See *Spier v. Barker,* 35 N.Y.2d 444, 363 N.Y.S.2d 916, 323 N.E.2d 164 (1974). Arizona, New Jersey, Wisconsin, and Florida have joined New York. *See Law v. Superior Court of State of Ariz.,* 157 Ariz. 147, 755 P.2d 1135 (1988)("nonuse of seatbelt can be considered and used to reduce damages if nonuse either caused or enhanced injuries to plaintiff"); *Dunn v. Durso,* 219 N.J.Super. 383, 530 A.2d 387 (1986); *Foley v. City of West Allis,* 113 Wis.2d 475, 335 N.W.2d 824 (1983); *Insurance Co. of North America v. Pasakarnis,* 451 So.2d 447 (Fla. 1984).

**3.** There is some dispute in the record over the actual amount of medical expenses attributable to Davis's injuries stemming from this accident. Davis contends he incurred $39,372.76 in medical bills directly caused by the accident. Knippling does not contest that Davis incurred $10,-369.87, but argues the remainder is attributable to an incident which occurred approximately three months after the accident when Davis was getting out of bed and his neck popped causing great discomfort and ultimately resulting in surgery to remove a herniated disk fragment. Knippling contends this surgery is not causally connected to the accident.

### 3. Evidence of Davis's Income

[¶ 15.] Generally, trial courts have broad discretion in questions relating to admission of evidence. *Schaffer v. Edward D. Jones & Co.*, 521 N.W.2d 921, 925 (S.D.1994). Evidentiary rulings will not be disturbed on appeal absent a clear abuse of discretion and a showing of prejudicial error. *Looks Twice v. Whidby*, 1997 SD 120, ¶ 9, 569 N.W.2d 459, 461; *Grode v. Grode*, 1996 SD 15, ¶ 38, 543 N.W.2d 795, 801; *Zepp v. Hofmann*, 444 N.W.2d 28, 31 (S.D.1989); *Shamburger v. Behrens*, 380 N.W.2d 659, 661 (S.D.1986); SDCL 15–6–61.

[¶ 16.] Though we have not had the opportunity to decide this issue before, the established rule elsewhere prohibits consideration of business profits and investment income in calculating lost earning capacity.[4] *Holland v. Ratliff*, 238 Ark. 819, 384 S.W.2d 950 (1964); *Riley v. Luedloff*, 253 Minn. 447, 92 N.W.2d 806 (1958)(in measuring loss of earning power, no evidence is admissible concerning profits from invested capital or the labor of others); *Robinson v. Greeley and Hansen*, 114 Ill.App.3d 720, 70 Ill.Dec. 376, 449 N.E.2d 250, 254–55 (1983); *Dingus v. Cain*, 56 Tenn.App. 294, 406 S.W.2d 169, 170–71 (1966)(allowance of proof of loss of profits held proper where plaintiff's services, rather than capital invested or the labor of others, was the predominant factor in producing the profit); *see* Jonathan M. Purver, Annotation, *Profits of Business as Factor in Determining Loss of Earnings or Earning Capacity in Action for Personal Injury or Death*, 45 A.L.R.3d 345, 353 (1972)("Where the profits from a business enterprise result primarily from the personal endeavors, skill, and attention of the owner, rather than from his investment of capital or from the labor of other persons, such business profits are a proper factor to consider in the determination of the owners lost earning capacity.").

[¶ 17.] Over Davis's standing objection, the trial court admitted evidence on income and profits he received from Davis Casino, Inc., a video lottery business, and J & J Partnership, which owns and manages an apartment building. Davis claims he does not actively participate in the day-to-day operations of either venture, and, as such, the law makes income from these sources irrelevant to finding loss of earning capacity. He is correct in stating the general proposition, but the evidence provides considerable support for not applying the rule here. In the tax years preceding his accident, Davis reported to the IRS that he had received substantial amounts of nonpassive income from both Davis Casino, Inc. and J & J Partnership. Even though he testified that he would receive this income whatever the extent of his involvement, the fact remains he reported the income to the IRS as nonpassive, thus suggesting he was actively involved in the creation and receipt of this income. Davis also testified that he received an annual salary from Davis Casino, Inc., which he reported to the IRS as W–2 income for work he performed for the casino. Lastly, he testified that although he was not considered a day-to-day employee of either entity, he was actively involved in the management and decision-making processes of both businesses. Knippling maintains, and we agree, that Davis cannot keep from the jury these facts, nor his representations to the IRS. His income from these businesses may be from passive investment, but Knippling should not be thwarted from trying to prove the contrary. Allowing parties to expose each other's inconsistent positions, assists the outermost aim of our rules that "truth may be ascertained and proceedings justly determined." SDCL 19–9–2; 19–12–1. The trial court did not abuse its discretion in admitting evidence of Davis's business income as relevant to his claim for loss of earning capacity.

[¶ 18.] Affirmed in part, and reversed in part, and remanded for a new trial.

[¶ 19.] MILLER, C.J., and SABERS, AMUNDSON, and GILBERTSON, JJ., concur.

---

4. An exception to the rule provides "only when a business generates profits primarily from the personal endeavors or skills of its owner, may such profits be used in determining such owner's lost earning capacity." *Mihalek v. Cichowski*, 4 Conn.App. 484, 495 A.2d 721, 723 (1985).